(No. 11410.—Reversed and remanded.)

The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, Appellee, vs. Stanley K. Gage et al. Appellants.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. Railroads—*in what manner railroads may consolidate under the act of 1885.* Under the Consolidation act of 1885 the authority exists for the making of a consolidation agreement between railroad companies in a position to avail themselves of the act that will result either in the continuance of the corporate existence of the two or more companies consolidating or the continuance of the corporate existence of one of the companies, or the extinction of all the companies and the formation of a new corporation as their successor. (*Chicago and Eastern Illinois Railroad Co.* v. *Doyle,* 256 Ill. 514, followed.)

2. Eminent domain—*railroad company may condemn lots of private owners without previous authority to cross streets and alleys.* A railroad company may begin proceedings to condemn for switch yards or right of way the lots of private owners located within the limits of an incorporated city without previous license from the city or authority from the Public Utilities Commission to cross the streets and alleys with its tracks. (*Alton and Southern Railroad* v. *Vandalia Railroad Co.* 268 Ill. 68, distinguished.)

3. Same—*railroad company not required to condemn street its track crosses.* A railroad company is not required to condemn any portion of the street which it crosses, and the city is not required to be made a party to condemnation proceedings where the condemning company merely crosses streets and alleys with its right of way.

4. Same—*when burden is on the petitioner to prove necessity for condemnation.* Whenever the averment of necessity in a condemnation petition is denied the burden is upon the petitioner to establish the fact, but an unrebutted *prima facie* case made by the proof is sufficient.

5. Same—*in negotiations for compensation land owner should be informed of real purchaser and purpose of acquiring the property.* In order that a land owner's refusal to sell shall be such, under the circumstances, as to warrant condemnation proceedings under the Eminent Domain act, the party negotiating with the land owner for an agreement as to compensation should inform the land owner as to who the real purchaser is and as to the purpose for which the property is to be acquired.

Appeal from the Circuit Court of Cook county; the Hon. Merritt W. Pinckney, Judge, presiding.

Wentworth, Cavender & Kaiser, Roberts & Swain, and Corr & Stanton, (Daniel S. Wentworth, of counsel,) for appellants.

Loesch, Scofield, Loesch & Richards, for appellee.

Mr. Justice Cooke delivered the opinion of the court:

The appellee, the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, filed its petition in the circuit court of Cook county for the condemnation of lands of appellants to be used as a part of its switching yards in the city of Chicago. Numerous legal objections were filed and a preliminary hearing was had before the court upon the motion to dismiss the petition. After the evidence was taken the court overruled this motion, and the cause was then tried before a jury on the question of the values of the lots sought to be condemned. This appeal followed, and error has been assigned to the action of the court denying the motion to dismiss, and also to the admission and exclusion of evidence and the giving and refusing of instructions in the jury trial and to the form of the judgment.

The points raised by appellants on the motion to dismiss, and upon which the errors are assigned in respect to that feature of the case, are: (1) That appellee is neither a *de jure* nor a *de facto* corporation and therefore does not possess the right to exercise the power of eminent domain; (2) that appellee's rights have been limited by ordinance; (3) that appellee had not obtained the consent of the Public Utilities Commission to cross the streets of the city of Chicago with the proposed improvement; (4) that the evidence was insufficient to prove necessity; and (5) that the evidence was insufficient to prove inability to agree on compensation.

Appellee offered in evidence a certified copy of its articles of consolidation, from which it appears that appellee had been formed in 1890 by the consolidation of the Pittsburgh, Cincinnati and St. Louis Railway Company, the Chicago, St. Louis and Pittsburgh Railroad Company, the Cincinnati and Richmond Railroad Company and the Jeffersonville, Madison and Indianapolis Railroad Company. Appellee contends that this consolidation was authorized by the Consolidation act of June 30, 1885. (Laws of 1885, p. 229.) It is the position of appellants, on the other hand, that neither this act nor any other statute in force at that time authorized such consolidation and that there has been no legislative enactment validating the same. Appellants contend that the act of 1885 authorized only the purchase of non-competing railroad lines by an Illinois corporation, and that a merger could only be effected under the act by the foreign roads transferring their franchises and property to the Illinois corporation, which must have control and jurisdiction over the merged corporations as an Illinois corporation. This question has been determined adversely to appellants' contention in *Chicago and Eastern Illinois Railroad Co.* v. *Doyle,* 256 Ill. 514. In that case by a tripartite agreement two Indiana corporations were merged into the Chicago and Eastern Illinois Railroad Company, an Illinois corporation. The Secretary of State took the position that the effect of the merger was to create a new corporation, and he demanded fees on that basis. We there held that three conditions may result from a merger or consolidation agreement between railroad companies, viz.: (1) A consolidation may be effected of two or more corporations and the corporate existence of each of the constituent companies may be continued; (2) the agreement may result in the merger of one or more corporations into another and provide for the continuing in existence of one of the corporations and the extinguishment of the others; or (3) the consolidation may result in the extinction, at the

280 — 41

same time, of all the constituent companies and the formation of a new corporation as the successor of all the contracting corporations. In considering the Consolidation act of 1885 as applied to these conditions, we there held that authority existed under the act for the making of a consolidation agreement between railroad companies that are in a position to avail themselves of the act that will produce any one of the three results stated. In that case it was stipulated that the sole question to be determined was whether, under the laws of this State, the merger agreement was the organization of a new corporation, it being the contention of the Secretary of State that a new corporation had been formed, and of the railroad company that the Illinois corporation continued. We held that under the broad power conferred by the Consolidation act of 1885 the construction contended for by the Secretary of State was as free from legal objections as that contended for by the railroad company. In the case at bar a new corporation, in name, was formed as the successor of the contracting parties. This was, in effect, simply changing the name of the Illinois corporation, the Chicago, St. Louis and Pittsburgh Railroad Company, as the consolidation contained all the steps required to be taken to effect a change in the name of a corporation. Appellee is a legally constituted corporation and possesses the right to exercise the power of eminent domain.

On April 5, 1888, the town of Lake passed an ordinance granting to the Chicago, St. Louis and Pittsburgh Railroad Company the right to lay within the limits of its right of way, over and across the streets and alleys in the town of Lake, whatever main tracks, side-tracks, turn-outs and switches the company then or at any time thereafter might desire to construct and maintain upon its right of way and to operate its trains over the same, provided that when the railroad company should wish to construct any track or tracks across any street or streets in pursuance of the au-

thority granted it should notify the board of trustees of the town, furnishing a plat showing the place and manner in which it proposed to construct its track or tracks, and provided, further, that nothing contained in the ordinance should be construed to give the railroad company the right to construct any track or tracks across any of the streets or alleys in said town of Lake outside of its 100-foot right of way, except upon such terms and conditions as the town of Lake might from time to time prescribe. The lots sought to be condemned were formerly situated in the town of Lake, and it is contended that the ordinance in question was a contract ordinance binding upon both parties and constituted a limitation upon appellee's right to condemn under the Eminent Domain act until consent had been obtained, by ordinance, from the city of Chicago, of which the town of Lake is now a part, and that such consent is a condition precedent to bringing condemnation proceedings. This is a question which the land owners cannot avail themselves of in a condemnation proceeding. The right of a railroad company to condemn for switch yards or right of way the lots of private owners located within the limits of an incorporated city is not affected by the absence of a license from the city authorizing the railroad company to cross the streets and alleys with its tracks. *Dowie* v. *Chicago, Waukegan and North Shore Railway Co.* 214 Ill. 49.

As the Public Utilities Commission is simply the successor of the city in the right of granting such license to a railroad company to cross the streets and alleys of a city, this proposition is also an answer to the contention that the petition should have been dismissed for the failure to obtain the consent of the Public Utilities Commission to construct the tracks of appellee across the streets and alleys of the city of Chicago. If it is necessary to secure a license from the city or the consent of the Public Utilities Commission to construct the tracks of appellee across any streets or alleys in the city of Chicago, that is a matter for consider-

ation after the completion of the condemnation proceedings and before the tracks of appellee may be laid across streets or alleys and is of no concern to the land owners.

In contending that the obtaining of the consent of the Public Utilities Commission is a condition precedent to the institution of eminent domain proceedings, appellants rely upon the case of *Alton and Southern Railroad v. Vandalia Railroad Co.* 268 Ill. 68, in which it was held that where one railroad seeks to cross the tracks of another at grade, not only must the consent of the Public Utilities Commission be obtained, but the plans and specifications must be submitted to and approved by the commission before eminent domain proceedings are commenced. The holding in that case has no application to the question presented here. Where one railroad seeks by condemnation to cross the right of way of another railroad it must condemn that portion of the right of way which it seeks to cross, and it is a material question, as bearing upon the amount of damages sustained by the company whose right of way is being condemned, whether the grades are to be separated or the crossing is to be at grade,—a question which must be determined by the Public Utilities Commission. A railroad company is not required to condemn any portion of the street which it crosses, and the city is not required to be made a party to condemnation proceedings where the condemning company merely crosses streets and alleys with its right of way. *Dowie v. Chicago, Waukegan and North Shore Railway Co. supra.*

To prove the necessity for the condemnation of these various lots appellee offered the testimony of one of its engineers and of the superintendent of its Chicago lines. These men testified, in substance, that the proposed yards were a continuation of the yards of appellee which extended north from Sixty-ninth street; that the yards north of Sixty-ninth street were congested and inadequate to accommodate the growing business of appellee, and that in

order to take care of the traffic and conduct its business economically it was necessary to extend the yards south from Sixty-ninth street to the extent proposed. When the averment of necessity in a condemnation petition is denied the burden is on the petitioner to establish the fact. (*City of Chicago* v. *Lehmann,* 262 Ill. 468.) Appellee made a *prima facie* case of necessity by the proof offered, and it was not rebutted nor contradicted.

Appellants complain that the court unduly restricted them in the cross-examination of appellee's witnesses as to the extent and condition of the yards existing north of Sixty-ninth street and of which the proposed yards were to become a part. We perceive no error in this regard.

The last question raised under the motion to dismiss is of a more serious nature. The Eminent Domain act provides that the party authorized to take or damage property required may institute proceedings when the compensation to be paid for or in respect of the property sought to be appropriated or damaged for the purposes mentioned can not be agreed upon by the parties interested. Appellants contend that this provision of the statute requiring an attempt to agree upon the compensation was not complied with, and that the petition, therefore, should have been dismissed. On this question appellee produced as a witness Edwin A. Warfield, who testified that he was in the real estate business in the city of Chicago and that he called upon each of the appellants and offered them prices for their lots ranging from $675 to $750, which in each instance was refused. It does not appear that at any time he disclosed the fact that he was negotiating in behalf of appellee or that appellee contemplated appropriating this property for a public use. It appears, on the other hand, that he individually made these offers to each of the appellants. In attempting to prove the agency of Warfield and his authority to make these offers in behalf of appellee, a letter addressed to Warfield and signed by G. C. Uquhart, real

estate agent of appellee, was offered in evidence. In that letter Warfield was directed to purchase lots of appellants, if possible, but it is apparent from the letter that it was the purpose of appellee that Warfield's agency should be kept a secret. The letter states that it is the intention ultimately to have the title vested in appellee but that for the present it would be taken in the names of individuals. It was evidently the intention and purpose of appellee to purchase these lots without disclosing to the owners that they were being purchased for appellee. It nowhere appears that appellants were at any time advised that appellee proposed to appropriate their property or that these negotiations were being conducted on its behalf. Appellee takes the position that the law does not require it to disclose its identity in its efforts to agree on the amount of compensation for property which it proposes to appropriate, and that it is sufficient if it makes an effort to purchase, directly or indirectly, by itself or through an agent, although the principal is undisclosed. This position is not sound. The statute contemplates that the owner should be fully advised as to the real party proposing to purchase and the purpose for which the property is to be acquired. It may well be that an owner not desiring to part with his property would refuse a price offered by an individual or refuse to name any price for his property, but if he were advised that the party proposing to purchase had the right to exercise the power of eminent domain and intended to exercise it, rather than become involved in litigation he might agree upon the compensation to be paid. The evident intent of the statute is that the land owner must be advised of the true situation and must know with whom he is dealing, in order that his refusal to sell shall be such, under the circumstances, as to warrant condemnation proceedings. This precise question has never been passed upon in this State. The State of Michigan has a statute in substance the same as ours, and this question was raised in *Fort Street Union Depot Co. v.*

*Jones,* 83 Mich. 415, where it was held that a statute which authorizes a union depot company to condemn land "in case any such company is unable to agree for the purchase of any real estate," contemplates knowledge on the part of the land owner, during the negotiations, of the purposes for which the land is wanted. This we believe to be the only construction that can be put upon the statute.

Because of the failure of appellee to show that it made the required attempt to agree with appellants as to the compensation they should receive for the taking of their property the court erred in denying the motion to dismiss the petition. For this error the judgment of the circuit court is reversed and the cause is remanded, with leave to appellee, if it so desires, to make further proof of an attempt to agree with appellants as to the compensation they should receive for their property.

*Reversed and remanded, with directions.*