(Nos. 24738, 24767.—)
THOMAS H. FISHER, Appellant, *vs.* WILLIAM CAPESIUS *et al.* Appellees.—THOMAS H. FISHER, Appellant, *vs.* WILLIAM B. MOULTON *et al.* Appellees.

*Opinion filed October 17, 1938—Rehearing denied Dec. 8, 1938.*

WILLARD C. WALTERS, for appellant.

OTTO KERNER, Attorney General, JEROME F. DIXON, DICKINSON, SPROWL, NORVILLE & JAMES, and STANTON & STANTON, (FREDERICK DICKINSON, FRANK J. DELANY, and BAILEY STANTON, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This appeal involves two decrees of the circuit court of Cook county, one entered April 9, and the other April 18, 1938. The cases have been consolidated here for review. We believe a brief history of a part of the litigation under which the issues in these cases arose is necessary to a proper understanding of the questions presented for consideration.

On August 18, 1937, William Capesius filed his complaint in chancery in the circuit court of Cook county on behalf of himself and of all other residents and taxpayers of the village of Winnetka, making defendants thereto the president and board of trustees and the superintendent of public works of the village, together with F. Lynden Smith, Director of Public Works and Buildings of the State of Illinois. By his complaint, Capesius set up the enactment of the Motor Fuel Tax law of 1929, as amended, (Ill. Rev. Stat. 1937, chap. 120, pars. 417-439,) alleged the allotment thereunder of over $60,000 to the village of Winnetka out of the Motor Fuel Tax funds; the purposes for which these funds lawfully might be applied by the village authorities and the necessity of securing the approval of the Department of Public Works and Buildings to the ob-

ject for which such funds might be devoted; that (although the above act provides that, so far as practicable, priority in the use of these funds shall be given to the construction and reconstruction of State highways in the village) the board of trustees had previously sought, without avail, to secure the required approval of the Department of Public Works and Buildings to the use of these funds for purposes permissible under the statute, other than the construction or reconstruction of State highways in the village; that, on May 11, 1937, the village board, coerced by the refusal of the department to approve the expenditure of such funds for any purpose other than the reconstruction of a State highway, passed an ordinance and resolution for the reconstruction, with concrete, of that part of Sheridan road (a State highway) within the village from the point where it intersects Tower road, northward to the village limits.

The complaint further averred that the portion of Sheridan road covered by such ordinance consists of a winding macadamized roadway of an approximate width of twenty to twenty-five feet, arched or crowned in the center to a height of several inches above the elevation of the side of the road, with no gutters or curbs; that the road continues northward from Tower road to the top of so-called Hubbard Hill, where the roadway descends into a ravine and continues to wind northward with numerous curves, gradually rising to a point approximately at the same height as that at the intersection of Sheridan and Tower roads, and that the area traversed by such roadway is one of the famed natural beauty spots of that region; that Sheridan road is a part of State highway No. 42, which, except for the portion here involved, has for many years been improved with a flat, concrete roadway about twenty-nine and one-half feet wide with concrete gutters and curbing; that the section of Sheridan road in question, on account of its crowned, macadamized construction, has been relatively free from danger to motorists using it due to the fact that they now drive

over it at moderate speeds and proceed in single file; that the effect of increasing the width of the road, repaving it with concrete, and tilting the plane or base toward the inside of the curves, as contemplated by the ordinance, will be to increase greatly the speed and number of cars using the highway and so render the same extremely dangerous to motorists using it; that, thereby, the increase in the danger from the use of such road will be so great as to require, at a later date, further construction or reconstruction of the road; that such proposed changes will impair and destroy the scenic beauty and attractiveness of Hubbard Hill and the ravine, and likewise greatly lower and impair the assessed value of adjoining property, reduce the taxes received therefrom by the village and thereby increase the taxes to be paid by the plaintiff and other taxpayers.

The complaint further alleged that such ordinance does not represent the true and independent judgment of the board as to the proper and practicable use of such gas-tax funds; that there are arterial streets, other than State highways, both within and without the corporate limits, which require construction and maintenance and upon which it is practicable and necessary that such funds be expended, but that the Department of Public Works and Buildings has "arbitrarily, impracticably, unnecessarily, unlawfully, improperly, and unwisely," failed and refused to approve the use of such funds for such purposes, by reason whereof the plaintiff and other taxpayers of the village will be taxed for the purpose of raising moneys for such purposes; that a large number of citizens, both property owners adjoining such portion of Sheridan road and elsewhere in the village, have petitioned the board of trustees against the passing of the ordinance mentioned; that the trustees had no lawful authority to pass such ordinance since they were acting pursuant to coercion of the department; that contracts have been entered into by the village for the surveying and engineering work in connection with the proposed changes, but

such contracts are illegal and void for the reasons indicated; that bids have been made for the work and the authorities of the village intend to enter into contracts with the successful bidder and that such contracts will be illegal and void and in violation of the Motor Fuel Tax law for the reasons above set out; that the payment of any moneys thereunder out of such funds allotted under the Motor Fuel Tax law would be a misappropriation of public funds and, for the reasons alleged, irreparable injury will be caused the plaintiff and other taxpayers of the village if the injunction prayed for is not granted.

On August 31, 1937, Capesius appeared before a judge of the circuit court of Cook county and presented his motion for a temporary restraining order as prayed in his complaint. At this hearing, the attorneys for defendant appeared and objected to the filing of the complaint against F. Lynden Smith, as Director of the Department of Public Works and Buildings, on the ground that the action was a suit in equity to restrain and enjoin the disbursement of public funds, and that the leave required by statute (Ill. Rev. Stat. 1937, chap. 102, par. 14, p. 2155) to make Smith a defendant, had not been obtained. Capesius then elected to amend, and on September 7, following, filed his amended and supplemental complaint eliminating Smith as a party defendant but adding nine others not named in the original complaint. On the same day, the trustees and the superintendent of public works of the village, through their attorneys, filed a motion to dismiss the amended and supplemental complaint for want of equity. After a hearing thereon at a later date, the court granted the motion and, on appeal to the Appellate Court, this order was affirmed.

On March 1, 1938, appellant Fisher brought a representative suit in chancery in the circuit court of Cook county as a resident and taxpayer of the village, against the trustees and superintendent of public works of the village, together with the Director of the Department of Public Works

and Buildings, the State Treasurer, the Director of the Department of Finance of the State, and others, as defendants. This complaint was closely similar in its allegations and prayer for relief to the complaint filed by Capesius. On the day fixed for a hearing on the petition for leave to file, the defendants moved to dismiss the complaint for the reason the issues presented were the same as in the Capesius suit, in which the dismissal order of the circuit court had been affirmed, on appeal, by the Appellate Court, and its mandate filed in the lower court, which, therefore, constituted a bar to the institution of the latter suit. The trial court, on the grounds urged, denied the petition and dismissed the proceeding. This order of April 9, 1938, is now before us on appeal as one of the two consolidated cases heretofore mentioned.

Thereafter, on April 18, 1938, Fisher presented his petition in the circuit court to intervene as a party plaintiff in the Capesius suit, and moved to file, *instanter*, his amended and substituted complaint, together with his petition to make the Director of Public Works and Buildings, the State Treasurer, and the Director of the Department of Finance, parties defendant. On the same day, the attorneys for the defendant appeared to oppose the petition and motion. After a hearing thereon, the court entered an order denying both petition and motion, and that order of April 18, 1938, is also now here on appeal. The amended and substituted complaint of Fisher, as intervening plaintiff, corresponded closely in its allegations and prayer for relief to the former complaint brought by Capesius.

Most of the arguments of appellant in this court are in support of his assertion that a taxpayer may enjoin any misappropriation of public funds or destruction of public property even though such misappropriation is made pursuant to a municipal ordinance or resolution or by contract for public work, and, further, that equity will enjoin any unreasonable or arbitrary exercise of a municipality's dis-

cretion over public highways. These arguments, however, are beside the issues before us for review. The sole questions here are as to the propriety of the above decrees of April 9 and 18, 1938.

The decree of April 9 was a denial of the right of appellant to file his original complaint. The record shows that this complaint sought to be filed was a representative taxpayer's suit, as was the Capesius suit; that it related to the same subject matter and facts, contained substantially the same material allegations and prayed the same relief, but sought to make parties defendant, the Director of Public Works and Buildings, the State Treasurer and the Department of Finance, who were not parties defendant to the Capesius complaint. The record further discloses that the Capesius suit was dismissed by the trial court only after full arguments by the attorneys representing the parties, and that the trial court, in making a statement of his reasons for its decision, went into the merits of the case as well as the lack of necessary parties; that the Appellate Court, on appeal, likewise based its decision not only on want of necessary parties defendant but also on the merits of the controversy. Since the Capesius suit was a representative suit of which appellant was a member of the class represented, he was, therefore, bound by the final judgment therein and his petition to file a later suit of the same kind involving like issues and relief was properly denied. *People* v. *Clark,* 296 Ill. 46; *Greenberg* v. *City of Chicago,* 256 id. 213; *Harmon* v. *Auditor of Public Accounts,* 123 id. 122; *Leonard* v. *Bye,* 361 id. 185; *Groves* v. *Farmers State Bank,* 368 id. 35; *Sattenstein* v. *Earl,* 328 id. 148; *Webb* v. *Gilbert,* 357 id. 340; *Hanna* v. *Read,* 102 id. 596.

As to the order of April 18, 1938, denying Fisher the right to intervene in the Capesius suit and to file his amended and substituted complaint, it is manifest from the record that a final judgment had been entered by the trial court in that suit and affirmed by the Appellate Court. It is funda-

mental that leave to intervene must be sought during the pendency of a cause. It is never permissible after the issues between the original parties have been determined and a final decree entered. That situation existed here, and the decree of the circuit court was right. *Haase* v. *Haase,* 261 Ill. 30; *Groves* v. *Farmers State Bank, supra.*

We have carefully examined and considered all the arguments made by appellant assailing the propriety of the two decrees on review but do not find them convincing.

For the reasons indicated, the decrees of the circuit court of Cook county entered in this cause on April 9, and April 18, 1938, respectively, will be affirmed.

*Decrees affirmed.*