Emma E. Harris, Appellee, v. Sovereign Camp of the Woodmen of the World, Incorporated, Appellant.

Opinion filed November 8, 1939.

Leon A. Colp, of Marion, for appellant.

R. W. Harris, R. T. Cook and E. E. Denison, all of Marion, for appellee.

Mr. Justice Culbertson delivered the opinion of the court.

Plaintiff below, Emma E. Harris, recovered judgment for $1,489.40 under a benefit certificate issued by defendant fraternal association to James Harris, her son.

The action was commenced prior to the enactment of the Civil Practice Act in 1931. The declaration alleged the issuance on May 14, 1930, to the deceased, James Harris, of a benefit certificate or policy of insurance, by the defendant fraternal benefit association. It contained the essential allegations to set forth a

cause of action. A plea of the general issue was filed by the defendant, and thereafter the defendant filed a special plea alleging in substance that the benefit certificate (through the constitution and by-laws of the association) provides that if any member fails to pay his dues, he shall become suspended, and all money paid on account of the membership shall be forfeited; and further provides that any person so suspended may, if in good health, be reinstated, but that such reinstatement shall not be effective unless such person be in fact in good health and continue in good health for 30 days thereafter, in addition to paying the defaulted assessments. The plea further alleges that the deceased, James Harris, became suspended because his assessment for the month of September, which became due on September 30, 1930, was not paid until October 20, 1930. James Harris died on October 23, 1930. The plea further avers that the said James Harris did not become reinstated as a member of the association. Plaintiff, in her replication, specifically denied that James Harris was suspended from membership, and, in an additional count, specifically avers that it was the custom of the defendant to accept overdue monthly payments of assessments of members of the defendant association resident in Marion, Illinois, the home of the deceased, and that the deceased became a member and continued to be a member at the time of his death. Said additional count likewise avers that by reason of such custom and habit, the defendant association waived provisions as to suspension from membership and forfeiture of benefit certificates, and this benefit certificate, by virtue of failure to pay monthly instalments when they were due.

Thereafter defendant filed a second special plea to the additional count of plaintiff, in which it avers in substance that, the deceased was suspended from membership and his benefit certificate was forfeited; that

he did not become reinstated because he was not in good health, and did not remain in good health for 30 days after his payment of dues on October 20, 1930. Such plea further avers that the financial secretary of the local camp of the defendant association, when accepting payment of the dues of the deceased, did not know of his illness and could not waive the provisions of the constitution of the defendant association for suspension of members and forfeiture of benefit certificates through failure to pay assessments when due. To such second special plea, plaintiff filed a replication which repeated the averments of the additional count setting forth the custom of the defendant association in accepting payment of assessments after they became due, without suspension from membership, and without forfeiture of benefit certificates, and specifically alleged that the deceased, James Harris, was never suspended from the association, and that his benefit certificate was never forfeited, and that he was a member of said association, in good standing, at the time of his death.

The evidence in the case, which was tried in September of 1937, shows that the insured, James Harris, was a young man 19 years of age when he joined the local camp of defendant association at Marion, Illinois. He lived with his father, W. T. Harris, who paid all of the dues and assessments in the defendant association for his son, who was not employed from the time of the issuance of the certificate on May 14, 1930, until his death. The deceased was apparently a strong and robust young man prior to his last illness, but on the 18th of October, while he was in Indianapolis, he caught a cold. Late on the night of October 20, the doctor, who had first diagnosed his condition as that of a cold, found that he had pneumonia. He was sent to a hospital the next day, and remained in the hospital until October 23, when he died.

The insured's father, who had made a practice of paying all of his son's dues in the association, testified that on two or three occasions he had not paid the dues until 30 or more days after they were due and that the payments had always been accepted; that he did not pay the September, 1930, dues to the financial secretary of the defendant association until about 8 or 9 o'clock on the morning of October 20th; at that time he had no knowledge of any kind that his son, the insured, was ill; he did not learn until late that evening of his son's illness. Plaintiff also produced other testimony of witnesses, which tended to show that it was the custom of the defendant association to allow members to pay dues and assessments at any time after due date, up until two or three months thereafter, and that in accordance with that custom such payments were accepted by the local camp and that such members were not considered as suspended from membership, nor were their benefit certificates forfeited, and that during such periods of default they were treated in all respects as members in good standing, with all the privileges of the association.

The payment made by the father of the deceased, was accepted by the financial secretary, and the money was sent to the sovereign grand lodge of the defendant association, and no attempt was made to return such payment until after proofs of death, furnished by the plaintiff, were submitted to the defendant association. Defendant association thereupon transmitted a check in an attempt to refund the amount of the last assessment paid by the father of insured, but such check was never cashed by the plaintiff.

The evidence likewise shows that the deceased, James Harris, was buried by the local lodge of the defendant association in accordance with the usual rituals and ceremonies of the burial of a member of the lodge in good standing. A letter was also intro-

duced, which was dated October 23, 1930, the date of the death of the deceased, and was addressed to the deceased insured as "Esteemed Sovereign," and was apparently written before the secretary at the Sovereign camp at Omaha, Nebraska, had received the last assessment paid on behalf of the insured. The letter appeals to the insured to pay his dues for the month of September, and recites that it is possible that the failure to pay had been the result of some misunderstanding on the part of the insured, and requests that the insured write the secretary if there was any information which he desired. It likewise recites that the failure to pay may have been an oversight, and states that if such is the case, insured should immediately pay the amount due, to the financial secretary of his camp, or, in the event that he has already done so, to disregard the letter. At that time the dues had already been paid to the local camp since October the 20th. The letter was not, of course, delivered to the home of the deceased until after his death.

The evidence further shows that on November 4, 1930, after the burial of the deceased, the local camp of the defendant association which had conducted the funeral ceremony and rituals, passed a resolution for their records, and for the family of the deceased, which, with becoming dignity, expressed regret at the death of the deceased, who was referred to in such resolution as "Our Esteemed Sovereign," and recites that he was a "loyal and enthusiastic Woodman and served faithfully as a member . . ."

The cause was tried before a jury, and the jury found the issues for the plaintiff and assessed plaintiff's damages at $1,489.40, upon which verdict the judgment of the court was based. Defendant filed motions for directed verdict at the close of plaintiff's evidence, and at the close of all the evidence; and also filed motion for judgment *non obstante veredicto,* and

for new trial, and in arrest of judgment. All motions were denied. Notice of appeal was filed with the clerk of the circuit court on May 14, 1938. *Praecipe* for record was not filed with the circuit clerk until May 25, 1938, 11 days after the filing of notice of appeal.

Plaintiff appellee filed motion to dismiss the appeal of defendant appellant for the reason that the praecipe for record was not filed within 10 days after notice of appeal had been filed. Such motion has been taken with the case for determination.

Appellees motion is based on provisions of Rule 36 (1) (a), which are substantially identical with Rule 1 of this court, and which provide in part, ". . . the appellant shall within ten days after the notice of appeal has been filed, prepare and file a *præcipe* with the clerk of the trial court, with proof of service, and serve a copy thereof on the appellee, or his attorney, in which appellant shall designate what parts of the trial court record are to be incorporated in the record on appeal. And the appellee, or co-appellant, prosecuting a separate appeal, shall, within five days after being so served, file a *præcipe* for such additional parts of the record as he may desire to have incorporated in the record on appeal, . . ." It is accurately observed by appellee that there is no specific provision in the rules of either court for obtaining an extension of time to file a *praecipe* for record on appeal. Appellee therefore concludes that the filing of *praecipe* for record more than 10 days after the filing of notice of appeal is not sanctioned, and that as a result thereof appellant's appeal should be dismissed. In this connection appellee likewise appropriately observes that if an appellant may disregard the time limit expressed in the rules, an appellee cannot know what parts of the record will be included in the record on appeal, and would not know whether it would be necessary for appellee to file a *praecipe* for additional parts of the record. As appellee expresses it,

the parties to this suit, and other attorneys and litigants in this State, are entitled to know whether such rule is to be applied inflexibly or, if not, when and under what circumstances it will not be so applied.

The interpretation of the rule, under the facts and circumstances here before the court, seems to raise a problem not heretofore considered in either the Supreme or Appellate Courts of this State. Appellee points to the case of *Lanquist v. Grossman*, 282 Ill. App. 181, in which case the appellant had filed one notice of appeal and failed to file his *praecipe* for record on appeal within the 10-day period specified in the rules. Fearing that he had forfeited his rights under such appeal, and that the appeal would be dismissed for that reason, appellant became anxious and filed a second notice of appeal, with a *praecipe* for record on such second appeal. The record on appeal was not filed within the time required by the rules after the first notice of appeal, but was filed within the time required by the rules after the second notice of appeal. A motion was filed to dismiss the second appeal. The motion was at first denied, but upon reconsideration, the court dismissed the appeal and stated, as a basis for so doing, that there is no provision in the rules of court for allowing a second notice of appeal, and that the second notice of appeal was a nullity. The court in that case stated (at p. 190):

"If plaintiff had proceeded with his original perfected appeal and filed his record on appeal in this court within apt time, even though his praecipe for record did not comply with the rules as to the time of its filing, a different question would have been presented." The question which would have been presented, to which the court refers, is one which now confronts this court.

It should be observed by this court in this connection that there is no provision of the Practice Act, or of the rules of court, which specifically directs the dismissal

of an appeal if the *praecipe* for record is not filed within the 10-day period referred to in the rule above recited. It should also be understood that the filing of notice of appeal is the only jurisdictional step required by the Civil Practice Act (*162 East Ohio Street Hotel Corp. v. Lindheimer,* 368 Ill. 294).

The objectives of the Civil Practice Act and the rules of court are, "to facilitate the orderly disposition of the business of the court, and to expedite prompt administration of justice" (*People v. Village of Wilmette,* 294 Ill. App. 362). Section 4 of the act itself [Ill. Rev. Stat. 1937, ch. 110, § 128; Jones Ill. Stats. Ann. 104.004] provides that the act shall "be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." In the *Wilmette* case, *supra,* the court emphasizes that simplification of the procedure was the purpose of the act, and that the prime object of the act was to enable parties to have the merits of controversies passed on by courts, and that the realities, rather than the technicalities, be decided.

Under section 81 of the Practice Act of 1907 [Cahill's Ill. St. 1931, ch. 110, ¶ 81], which contained specific provisions as to filing of *praecipe* for record (including a five-day notice to be served on the opposite party, or his attorney), the Supreme Court of this State stated in *People v. Union Gas & Electric Co.,* 258 Ill. 193 (at p. 195):

"We agree with appellee that the statute imposes a duty on parties intending to take an appeal or prosecute a writ of error to give the required notice, but we do not agree that the giving of such notice is an indispensable prerequisite to the right to have the record reviewed. The object of the legislature is clearly expressed in the statute above quoted. It was intended to give the appellee or defendant in error information

as to the particular portions of the record that the appellant or plaintiff in error intended to bring up, in order that appellee or defendant in error might, if he saw proper, file an additional *praecipe* for any other portions of the record that he might deem necessary to a full presentation of the errors assigned by appellant or as a basis for any cross-errors that he might desire to assign. If appellant brings up the entire record the failure to give notice can work no injury to appellee, and this court has held that where the complete record is brought up, the failure to give the notice is a matter of no serious importance. Where the appellant or plaintiff in error fails to give the notice and files a *praecipe* for only certain parts of the record less than the whole, the statute should be complied with; but in such case appellee should show, by affidavit or otherwise, that the record as called for by the appellant's *praecipe* is insufficient to properly present the error assigned, or that some additional portion of the record is necessary to enable the appellee to assign cross-errors.'' The emphasis in such case was placed on the fact that the entire record was before the court, and that thereby an appellee could not conceivably be prejudiced. In the case before this court, the entire record was, likewise, brought up by the appellant, and the record was filed on appeal within apt time after the filing of the notice of appeal. There is no showing that the appellee was prejudiced or inconvenienced in any respect.

It would be a strange commentary on our much heralded progress in matters of appellate procedure and the administration of justice if this court, and the courts of this State, were to adopt a rule of construction relating to the time of filing of the *praecipe* for record more technical than that adopted by the Supreme Court under the old Practice Act, or less liberal in its construction than was the case under the old act.

This court feels that there is no necessary or desirable reason for so doing. At the same time we do not feel that the implication should be drawn from this opinion that the filing of the *praecipe* for record and the rules referred to in this opinion, can be disregarded with impunity. The guiding principle which moves this court to its conclusion in this connection, in the instant case, and which we feel will be pursued by courts of this State in the future, is that of attaining the objectives of the Practice Act in promoting the orderly administration of justice. While adherence to the rule governing the time for the filing of the *praecipe* is desirable and should in all cases be pursued by appellants, unless it can be shown on appeal that an appellee is actually prejudiced through the failure to file such *praecipe* for record in apt time, this court feels that appeals should not be dismissed upon that ground alone. For the purposes of this decision, however, it is only necessary for this court to reiterate that where the whole record is brought before this court and where the record is filed in apt time on appeal following notice of appeal, the fact that the *praecipe* for the record has not been filed until 10 days after filing notice of appeal, where no prejudice to the appellee is shown, will not justify a dismissal of the appeal because of such delay in filing the *praecipe*. This court feels that under the present state of the rules, no mathematical formula relating to the filing of such *praecipe* for record can be devised, but that unless some showing is made of prejudice to an appellee, or to the prompt administration of justice in our courts of review, no dismissal of an appeal should be countenanced on the technical ground of delay in filing of the *praecipe*. The motion to dismiss the appeal will, therefore, not be allowed, and we shall proceed to a consideration of this case on its merits.

Defendant association relies for reversal upon the contentions that the court failed to sustain the various

motions made by the defendant, and referred to in the statement of facts; and upon alleged error in the giving of an instruction, which will be considered later in this opinion; and, likewise, upon the ground that the judgment is contrary to the law and to the evidence by reason of the fact that James Harris was not shown to be a member of the defendant association, but was suspended therefrom and never became reinstated before his death; that no evidence of the waiver of the right to forfeit the membership of the deceased was shown; and that there is no evidence of the reinstatement of any member of the local camp who was in ill health at the time, or who had not remained in good health for 30 days thereafter; and that, therefore, there is no competent evidence upon which the jury could find a waiver or estoppel of the defendant association to claim a forfeiture of membership. The contentions of the defendant association are not, however, sustained by the evidence or the law of this State.

Courts are always reluctant to enforce forfeitures, which are not favored and will not be enforced when against equity and good conscience (*Knights Templars & Masons Life Indemnity Co. v. Vail*, 206 Ill. 404). As a matter of fact, it has been an established policy to give ready consideration to any circumstances showing a waiver of forfeitures (*Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Tucker*, 157 Ill. 194).

The uncontradicted evidence in this case shows a custom on part of the local lodge of receiving dues after due date, without declaring a forfeiture of membership. It has been established that the subordinate lodge of a benefit society is the agent of the principal lodge, and if the benefit association permits the subordinate lodge and officers to receive dues in such manner as to justify a member in believing that the reasons for forfeiture specified in the by-laws have been waived, the society cannot set up a forfeiture incurred by relying upon

such action, as a defense to a suit on the certificate (*Dromgold v. Royal Neighbors,* 261 Ill. 60).

It has likewise been held that conduct on the part of a mutual benefit society which amounts to a recognition of a member's claim of continuing rights of membership, will relieve him of the consequences of his default. The receipt of assessments after default of payment is a common form of waiver which in most cases is a question of fact for the jury (*Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Tucker, supra; Olszewski v. Fitchie,* 287 Ill. App. 452).

In connection with the letter addressed to the deceased in the instant case, it has also been held that the letter of an officer of a benefit association, having authority, addressed to a member of a local lodge of such association, requesting or demanding payment of an overdue premium, amounts to a waiver of any right of the association, under its by-laws, to claim a forfeiture and suspension of the member in default, and such letter has been held, without other evidence, to amount to a waiver of the right to forfeit the membership (*Waerness v. Independent Order of Foresters,* 244 Ill. App. 211).

A case of particular interest in connection with the evidence and the law involved in the instant case, is that of *Routa v. Royal League,* 274 Ill. App. 152. In that case the facts in many respects approximated those in the instant case, and the pleadings were practically the same. The same contentions were made by the defendant on the point of reinstatement of the insured, but the court pointed out in that case, as is clearly true in the instant case, that it was not a question of reinstatement of a suspended member which the court was called upon to decide, but that the question was whether or not the insured's membership had been suspended; whether or not the insurance had become forfeited; or whether the default in payment of the premiums had been waived. In that case the pay-

ment of the past due premiums was made to the association, and accepted, after the insured was dead. The court in that case says (at p. 173):

"A fraternal benefit society will not be permitted to treat a benefit certificate as alive and in full force, and accept the member's money over a period of years in violation of suspension and forfeiture provisions of its contract until death occurs, and then for the first time seek to void the certificate and escape its liability. Neither will such an association be permitted to insist on the forfeiture of a benefit certificate issued by it for nonpayment of assessments when due, where its course of dealings with the member has led her to believe that the provisions for forfeiture would not be relied upon."

The conclusions of the court in the *Routa* case, *supra,* are equally valid in this case. The court in that case determined that the insured continued as a member of the fraternal benefit association and that the certificate of the deceased had not been forfeited prior to death. In the instant case it is our conclusion that James Harris was never suspended from membership and that his certificate was never forfeited. The course of conduct of the defendant association in accepting payment of assessments after due date, without insistence on suspension or forfeiture provisions; the custom of the defendant association as to payment of dues of other members of the local camp to which the deceased belonged, permitting the payment of dues in arrears without suspension or forfeiture; the letter addressed to the deceased by the secretary of the home office of the defendant association, requesting payment of assessments (and obviously considering the deceased as still a member by virtue of reference to the deceased as "sovereign"); the activity of the local lodge in the burial ceremonies of the deceased, and the formal resolution passed by the local camp in connection with the death of the deceased, unequivocally indicate that any provision of the constitution or by-laws of the de-

fendant association requiring automatic suspension of membership or forfeiture of the insurance, was waived by recognizing the insured's membership as continuing and his insurance still in force.

A substantial portion of the brief submitted on behalf of defendant association refers to the question of reinstatement and the payment of the assessment at a time when the insured was not in good health, or did not remain in good health for a period of 30 days. There is apparently some unnecessary confusion as to the issues in the case. Under the pleadings no issue of reinstatement of insured was raised. The pleas of defendant setting up reinstatement were answered or replied to by plaintiff through the allegation that the deceased was never suspended and that the insurance was not forfeited. Plaintiff, on appeal, makes no contention that there was any reinstatement effected by insured, but insists that the membership was never suspended, and that the insurance was never forfeited. As indicated above, we agree with that conclusion, and accordingly do not find it pertinent to discuss the issue of reinstatement raised by defendant association.

Defendant association has likewise complained of an instruction given by the court, on the theory that such instruction is an incorrect statement of law in that there was not included in such instruction a recital to the effect that if the deceased was ill at the time payment of the last premium was made, or did not remain in good health (apparently for 30 days), there could be no waiver through acceptance of such payment. In view of the basis of this decision, we do not believe that the addition of such statements would be justified, and under the facts as shown of record, we do not believe that any instruction on the question of waiver and reinstatement through payment of the last assessment, would be material. The giving of such instruction, in any event, was not of such prejudicial character as to require reversal under the facts shown in

the record. The evidence in the case clearly shows plaintiff's right to recover on the benefit certificate.

For the reasons stated in this opinion, the judgment of the circuit court of Williamson county will be affirmed.

*Affirmed.*