Harold Shlensky, et al., Plaintiffs Below, Appellees, v. South Parkway Building Corp., etc., et al., Defendants Below, Appellees. Louis Engelstein, Intervenor Petitioner, Appellant.

### Gen. No. 48,722.

First District, Second Division.

October 23, 1962.

Additional opinion, October 29, 1963.

Charles T. Martin and J. William Hayton, all of Chicago (Bell, Boyd, Lloyd, Haddad & Burns, of counsel), for Louis Engelstein, applicant for intervention-appellant.

Anan Raymond, Samuel W. Block and Herbert B. Olfson, all of Chicago (Thompson, Raymond, Mayer & Jenner, of counsel), for Aleck L. Bernstein, Harry M. Engelstein (deceased), Robert W. Mackie, and Louis

R. Peyla, appellees. Edward L. Vollers of Chicago (Milliken, Vollers & Parsons, of counsel), for South Parkway Building Corporation, appellee. William T. Kirby, of Chicago, for Harold Shlensky and Max Shlensky, appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court:

This case began in 1952 as a derivative stockholders' suit brought by Harold Shlensky and Max Shlensky, owners of 236 shares of defendant South Parkway Building Corporation, on their own behalf and on behalf of all other stockholders similarly situated against said corporation and its directors: Aleck L. Bernstein, Harry M. Engelstein, Robert W. Mackie, and Louis R. Peyla. The chancellor entered a final decree in favor of plaintiffs on December 11, 1957, which found, inter alia, that the defendants-directors had violated their fiduciary duties to the stockholders of South Parkway Building Corporation and that they were in equity and in good conscience jointly and severally liable for the loss, if any, which resulted to the corporation in each of five transactions. The decree directed the defendants to account to the corporation for the benefit of its shareholders for such loss and set forth certain standards to govern the accounting. The court reserved jurisdiction of all matters pertaining to the accounting. The defendants were also required to pay costs aggregating $8,763.95 incurred by plaintiffs in bringing the suit.

An appeal was taken from this decree and the Appellate Court reversed and remanded with directions to dismiss the complaint for want of equity. Shlensky v. South Parkway Bldg. Corp., 21 Ill App2d 538, 159 NE2d 31. On further appeal the Supreme Court reversed the Appellate Court and "remanded to the circuit trial court so that the decree entered by the chan-

136

cellor may be properly effectuated." Shlensky v. South Parkway Bldg. Corp., 19 Ill2d 268, 166 NE2d 793.

On August 10, 1960 judgment was entered for costs aggregating $9,894.75, plus $1,427 for the costs incurred by plaintiffs in the Supreme Court. This judgment has been paid in full and satisfied. Thereafter on March 27, 1961, plaintiffs filed a "petition for order on defendants to file statement of account." Defendants were ordered to file this statement by April 27, 1961 and this was later extended to May 29, 1961. Defendants have never filed this statement.

Beginning June 9, 1961, plaintiffs and defendants initiated a plan of compromise, the general outline of which, was for the corporation to borrow money and redeem the shares owned by the minority shareholders at a price of $97 per share and for the corporation to pay counsel for plaintiffs $85,000 as attorneys' fees for services and to pay plaintiffs a special additional sum of $20,000 to cover the "costs of the litigation not otherwise heretofore reimbursed." Defendants-directors were to be excused from their joint and several liability to account and pay for the loss to the corporation for the five transactions referred to in the original decree. This plan was approved on September 27, 1961 by final order of court, at which time the court also found that the plan of compromise obviated the need for an accounting and denied the application of Louis Engelstein for leave to intervene.

It is from this order that the instant appeal is taken.

In the present proceeding counsel for plaintiffs estimated that the total amount recoverable by the corporation from the defendants would be approximately $446,500. He also testified that assuming counsel fees and costs aggregating $105,000 were deducted from the $446,500, there would remain a total of

137

$341,500 which, divided by the 17,284⅔ shares of the corporation outstanding, would produce a recovery to the corporation in the gross amount of $19.71 per share.

Louis Engelstein, applicant for intervention, contends in this appeal that, following the affirmance by the Supreme Court and the remandment to effectuate an accounting, the Circuit Court had no jurisdiction except to take the accounting and fix the joint and several liabilities of defendants.

Louis Engelstein is a 40% partner in a partnership, Englestein v. Mackie, 35 Ill App2d 276, 182 NE2d 351, which owns approximately 92% of the shares of South Parkway Building Corporation. The remaining 8% is owned by miscellaneous persons including plaintiffs. The final order from which this appeal is taken excuses defendants from accounting and paying anything to the corporation and instead provides that the corporation shall buy out the 8% minority interest at $97 per share and pay plaintiffs' attorneys' fees of $85,000 plus an additional $20,000 for unrecorded costs. Louis Engelstein contends that the provisions of the order appealed from prejudice him and that the order is invalid. He further contends that he is entitled to intervene pursuant to Ill Rev Stats 1961, c 110, § 26.1 on the ground that the representation of his interests by existing parties has become inadequate and that he will be bound by the final order. The applicant prays for a reversal of the order and a remandment of the case to the Circuit Court to take the accounting ordered by the Supreme Court.

After the remandment by the Supreme Court the Circuit Court was bound to proceed in conformity with the specific directions of the Supreme Court and take an accounting. We agree with the applicant for intervention that the Circuit Court had no right to readjust any part of the former decree and it was im-

138

proper to enter the order approving the plan of compromise. Wolkau v. Wolkau, 217 Ill App 471; People v. Waite, 243 Ill 156, 90 NE 183; Griesbach v. People, 226 Ill 65, 80 NE 734; Union Nat. Bank v. Hines, 187 Ill 109, 58 NE 405. See also Baum v. Hartmann, 238 Ill 519, 87 NE 334. It was the duty of the Circuit Court to examine the opinion of the Supreme Court and proceed in conformity with it. Pittsburgh, C., C. & St. L. Ry. Co. v. Gage, 286 Ill 213, 117 NE 726.

The plaintiff in a stockholders' suit does not sue in an individual capacity, but as the representative of the corporation. Duncan v. National Tea Co., 14 Ill App2d 280, 294, 144 NE2d 771 (citing numerous cases). In view of this general rule and the facts presented here which show that the so-called plan of compromise would wipe out what may prove to be a substantial recovery from the directors, keeping in mind that the recovery accrues to the corporation rather than to any individual stockholder, the plan of compromise presented here is not such a situation where the parties may consent to the entry of a decree in a lower court different from that directed by the mandate or judgment of a higher court. See Spring Lake Drainage & Levee Dist. v. Stead, 263 Ill 247, at 251, 104 NE 1014.

Plaintiffs attempted to pave the way for the plan of compromise by filing an unverified petition for liquidation of the corporation, which contained no factual allegations as grounds for liquidation. See Ill Rev Stats 1961, c 32, § 157.86(a) 3 & 4; Central Standard Life Ins. Co. v. Davis, 10 Ill2d 566, 141 NE2d 45; Gidwitz v. Lanzit Corp. Box Co., 20 Ill2d 208, 170 NE2d 131. No answer was made to the petition since defendants were excused from answering, the court never acted on the petition, no receiver was ever appointed and there was no decree of liquidation. The filing of the petition for liquidation was therefore of

no consequence and does not serve as a basis for the plan of compromise.

Plaintiffs' next step was the filing of a petition for discontinuation of liquidation proceedings. This proceeding need not be discussed at length. Suffice it to say that the case was not converted into a liquidation proceeding and the subsequent plan of compromise cannot be used to thwart the remanding order of the Supreme Court.

 The facts presented here also show that Louis Engelstein is entitled, as a matter of right, to intervene in this action by virtue of the intervention statute. Ill Rev Stats 1961, c 110, § 26.1. That statute provides: "(1) Upon timely application anyone shall be permitted as of right to intervene in an action: . . . (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action." See also Duncan v. National Tea Co., 14 Ill App2d 280, 144 NE2d 771; Mensik v. Smith, 18 Ill2d 572, 166 NE2d 265.

Plaintiffs contend that intervention in a representative action is sought too late when it comes after a decree and appeal. This argument is without merit in the instant case because it was not until after there had been a decree and appeal that appellant's rights were prejudiced and he could avail himself of the intervention statute for protection. It was at this time that the actions of the appellees rendered "the representation of the applicant's interest . . . inadequate."

Plaintiff is correct in that there is a general rule of law that intervention comes too late when it comes after a decree and appeal. He cites Fisher v. Capesius, 369 Ill 598, 17 NE2d 563 for this proposition. In the Fisher case, the appellant, a member of the class being

140

represented, was not permitted to intervene in a representative taxpayers' suit after a final decree had been entered. In Haase v. Haase, 261 Ill 30, 103 NE 628, appellant was not permitted to intervene in a partition suit concerning land devised by will after a final decree of partition, even though he had a contract with the testator which would have prevailed over claimants in the partition suit. Appellant, in this case, was fully aware of the partition suit while it was pending and could have successfully intervened at that time. In Groves v. Farmers State Bank of Woodlawn, 368 Ill 35, 12 NE2d 618, intervention was not permitted in a situation wherein claimants could have intervened during the pendency of this suit but waited instead until after the final decree before asserting their equities. See also Yedor v. Chicago City Bank and Trust Company, 323 Ill App 42, 54 NE2d 728.

These cases differ from the case at bar in that in the instant case appellant's representation did not become inadequate until after the decree of the Supreme Court. In the cases cited, the applicants for intervention could have asserted their equities during the pendency of the suits. In this case, Engelstein had no reason to intervene during the pendency of the suit since his interests as a stockholder were being adequately represented. When the appellees began acting in their own interests rather than in the interests of the corporation and assented to the compromise which was subsequently effectuated by a final order of which Engelstein had no notice, his rights became prejudiced and he should be allowed to intervene and assert the impropriety of the compromise and subsequent order.

Ill Rev Stats 1959, c 110, § 26.1 provides: "Upon timely application anyone shall be permitted as of right to intervene in an action: . . . (b) when the rep-

141

resentation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action. . . ." It is true that in the instant situation if this statute is strictly construed the applicant should not prevail in his petition for intervention since his interest has already become bound by a final order. However, Ill Rev Stats 1960, c 110, § 4 as amended from the 1961 act provides: "This act shall be liberally construed, to the end that controversies shall be speedily and finally determined according to the substantive rights of the parties. The rule that statutes in derogation of the common law must be strictly construed does not apply to this act or to the rules made pursuant thereto." Gray v. Kroger Grocery & Baking Co., 294 Ill App 151, 13 NE2d 672; People v. Village of Wilmette, 294 Ill App 362, 13 NE2d 990, and Harris v. Sovereign Camp of Woodman, 302 Ill App 310, 23 NE 2d 793. In the Wilmette case, at page 368, after emphasizing that the purpose of the act was to provide for a speedy and final determination according to the substantive rights of the parties, the court stated: "The purpose of the entire act (i. e., Civil Practice Act) was to simplify the procedure and the prime object of the act was to enable the parties to a cause to have the merits of their controversies passed upon by the courts —the realities considered rather than the matter be decided on mere technicalities which often justly bring the courts in disrepute. If the act is to be liberally construed according to the substantive rights of the parties, as it is expressly provided, this purpose will be nullified and the act guillotined by strict construction of rules of court adopted to aid the carrying of the act into effect—a strange commentary to construe the act liberally but the rules strictly." See also People v. Davis, 357 Ill 396, 192 NE 210 and People v. Feinberg, 348 Ill 549, 181 NE 437.

142

Appellees filed their unverified petition for liquidation on June 7, 1961. Defendants were excused from answering this petition by an order of June 23, 1961. On June 23rd plaintiffs also filed their petition for discontinuation of liquidation proceedings which for the first time set forth the plan of compromise which recited that the plan "has been approved by the majority stockholders of the company and by the directors of the company." Defendants filed an answer on the same date approving the plan and had their order entered setting forth and approving the plan. Louis Engelstein had no notice of these proceedings on June 23rd. Subsequently, defendants printed the order and mailed it to all stockholders. It was at this time that Louis Engelstein became aware that plaintiffs had repudiated or were improperly pursuing their derivative representation of the corporation.

The applicant's petition for intervention was filed July 13, 1961 and this must be regarded as timely because it was at this time that his interests became prejudiced.

Louis Engelstein's interest in seeing that the corporation realizes on its judgment is based on his 40% interest in a partnership which owns 92% of the South Parkway Building Corporation, 35 Ill App2d 276, 182 NE2d 351. It is obvious that the applicant's economic interest would be seriously affected if the plan of compromise were allowed to short circuit the required accounting. Appellees were suing derivatively on behalf of the corporation, not on behalf of the minority stockholders. The plan of compromise must therefore be regarded as a nullity. To permit it would result not only in a personal detriment to the appellant but also in a loss rather than a gain to the corporation for whose benefit the original action was brought.

The order denying Engelstein's application for intervention and the decree confirming the settlement

are reversed and the case remanded for the purpose of effectuating the Supreme Court's decree.

Reversed and remanded.

FRIEND, J., concurs.

BURKE, P. J., dissenting:

The chancellor was right in denying intervention to Louis Engelstein. Plaintiffs owned, prior to the redemption under the plan of compromise, 241 of the 17,284⅔ outstanding shares. They faithfully prosecuted the case for 10 years at every judicial level and secured for themselves and other plaintiff shareholders' adoption of a plan of compromise which they proposed. The evidence supports the decision of the chancellor that the representation of appellant was adequate. Appellant's interests were adverse to his being allowed to become an intervenor on the side of the plaintiffs. Appellant is in no position to argue that the efforts being made for minority shareholders are inadequate. The results for the stockholders are more than adequate. The court is not ordering the distribution of any property in the custody of the court. Appellant can collect $97 a share for the 45 shares owned by him by applying for it at the corporation. Louis Engelstein cannot attain standing justifying intervention because of his claim to a much larger stock ownership in his partnership suit with Harry M. Engelstein. The latter was part of the group of defendants in the wrongdoing condemned in the Supreme Court opinion. Louis Engelstein's position is adverse to that of the plaintiffs. Therefore appellant has no honorable ground to intervene in these proceedings. He stayed out for many years when he could have joined plaintiffs if he believed they were in justice entitled to win. It is now too late for him to seek to impose his will upon everyone.

144

The chancellor heard evidence and made findings of fact on what would be fair, reasonable and proper costs and attorney's fees. The amounts were itemized in a report to all stockholders, were ratified by them and allowances incorporated in an integral part of the plan finally approved by the chancellor. It should not be necessary to consider the propriety of the allowance of fees, costs and expenses because the decision of the chancellor against intervention should be sustained. The allowance to plaintiffs' attorney of $85,000 for a recovery equivalent to $446,500 in a case wholly contingent, which went through the master, the chancellor and two courts of appeal, is supported by the schedule of fees of responsible bar associations. The allowance of $20,000 for "costs of the litigation not otherwise heretofore reimbursed" is sustained by the record.

The court, after remand, took no steps inconsistent with the Supreme Court mandate or beyond its jurisdiction. The rule is well settled that the court is bound by the prior opinion but may take some new steps if they are not in impeachment or contradiction of the higher court's opinion. Green v. City of Springfield, 130 Ill 515, 519, 22 NE 602; Gee v. Hoeppner, 267 Ill App 459, 465; West v. Douglas, 145 Ill 164, 166, 34 NE 141; Dinsmoor v. Rowse, 211 Ill 317, 319, 71 NE 1003; 5B CJS, Appeal and Error, pp 574, 603, to the effect that when a case is remanded the court may take steps not inconsistent with the order of remand. The chancellor had the right, when the defendants defaulted on the accounting, to consider the further, as well as the continuing, illegal and oppressive acts of the defendants, and to consider whether it would not give the minority stockholders proper relief by the compromise method which was more advantageous to them, than dragging on with the litigation. The position of appellant that nothing could be done but hold an accounting, would preclude any settlement without

a lengthy accounting. Obviously much litigation is settled after remand. From experience we know that after an appeal the parties and their counsel are sobered into settlement without the bitterness that is at least partly laid to rest by the feeling they have been fully heard. Appellant has induced the majority to declare a rule that would preclude such settlement, if they require court approval, on the ground that there is not a literal carrying out of the mandate. Section 52.1 of the Civil Practice Act allows compromise of class actions on such terms and notice to the class as the court directs. There is no complaint that adequate notice was not given.

The reviewing court which issues the mandate, in this case the Supreme Court, has the power to enforce the mandate and to determine whether there has been compliance with it. It is doubtful that appellant would have any standing in the Supreme Court to urge a noncompliance with the mandate.

MR. JUSTICE BRYANT delivered the opinion of the court:

The thrust of the original opinion is that the suit was brought as a stockholders' derivative suit for the benefit of the corporation. This was not a class action brought for the benefit of the minority holders. It is true that there are cases allowing the dissolution of the corporation or a distribution to the minority holders in lieu of a direct recovery to the corporation. Where a stockholder seeks to intervene, however, for the direct benefit of the corporation, he must be given a forum. Only the action of all the stockholders could deprive the corporation of its direct recovery.

Whether Louis Engelstein has clean hands or not is irrelevant for the purposes of this proceeding. The record shows only that Louis is an innocent stockholder.

146

Louis Engelstein is to be joined as an intervening plaintiff. There is no basis for joining Louis as a defendant because there has never been a question of partnership liability raised. Harry Engelstein was sued individually.

Whether the partnership indirectly controlled 74% or 92% of the stock of South Parkway Building Corp., is irrelevant. Either figure represents a substantial interest.

We have modified the opinion in accordance with suggestions of counsel to strike certain specific phrases. Neither the facts of this case nor the arguments on rehearing merit further consideration.

FRIEND, J., concurs.

BURKE, P. J., dissents.

BURKE, P. J., additional dissent following rehearing:

The stock of South Parkway Building Corporation was never owned by the partnership. If appellant's interest was in any way adversely affected as a member of the partnership his protection lies in the accounting procedure available to him in Engelstein v. Mackie. The overthrowing of the compromise approved by the court penalizes the true minority stockholders without benefiting the corporation and adds nothing to the rights appellant has as a partner. Under the compromise, approved by the chancellor, appellant as a shareholder receives more than he would upon an accounting. What he complains of is the effect of the compromise on his status as a partner in the partnership entity claiming some interest in the proceeds of the liquidation of the corporation which had owned the stock of South Parkway Building Corporation.

147

The entities against which appellant's interest may be asserted and the entity to which the South Parkway Building Corporation was distributed could have no standing to intervene in this case. The decree in the partnership case involving the transaction of the partners Engelstein expressly found that all services performed by Harry Engelstein to the time of his death on June 24, 1959, were performed pursuant to the continuing 40–60 partnership between Louis and Harry. The wrongful diversions from South Parkway Building Corporation were accomplished by Harry conducting the business partnership of Harry and Louis. In these proceedings the partnership and Louis, the appellant, as a partner are equally liable as participants in the wrongful diversions, under the provisions of the Uniform Partnership Act, Ill Rev Stats 1961, c 106½, §§ 9, 13, 14 and 15. Plaintiffs in the instant case had to sue Harry for actions he ostensibly did on his own account. The wrongs were established to have been done by Harry. Now that appellant has established that these acts were in fact done for a 40–60 partnership appellant cannot complain that this liability shifted to Louis. The appellant as a surviving partner is obliged by the partnership decree to "discharge all partnership liabilities" which include the liability that has gone to judgment in this case. The appellant as a partner of Harry cannot plead immunity in these proceedings from exposure to 40% of the liability. Plaintiffs never represented Louis Engelstein, appellant, as successor to a wrongdoing partnership of Harry and Louis and appellant never thought that plaintiffs represented him. Appellant's position as the owner of a few shares individually was such that he could have sought to intervene before final decree, but did not. Louis, as a partner of Harry was in privity with the wrongdoing majority and interven-

148

tion to him was properly denied. A derivative suit by minority stockholders is not brought for the benefit of wrongdoing shareholders. In Duncan v. National Tea Co., 14 Ill App2d 280, 144 NE2d 86, the court says, p 295: "Because, in such an action, the stockholder-plaintiff is enforcing a right belonging to the corporation, and a recovery on its behalf would benefit all stockholders, except those who had actively participated in the wrong, . . . ."

The appellant's position during the long period of litigation has been that Harry was acting for a partnership of Louis and Harry. Louis never made the gesture of seeking to join the plaintiffs or took any other step to help plaintiffs prove Harry was a guilty fiduciary. The question before this court is whether intervention should have been allowed to appellant to permit him in 1961 to assume a position of opposition to the five transactions first challenged in 1952 and decreed wrongful in 1957. If there is some adjustment appellant would be entitled to in the partnership accounting that is the place to secure it. The purpose of the present intervention is to assert that as between himself and his partner he is entitled to claim the benefits, but not share the judgment arising out of the transactions by which the Supreme Court says "the Engelstein Corporation has drained from the Building Corporation approximately $464,886." If appellant is allowed to intervene, as the majority opinion indicates, a key issue he would try would be opposition to the five challenged transactions. In effect he wants to prove he did not receive "unjust" enrichment out of the $464,886. The right of appellant, Louis Engelstein, to demonstrate in the instant case that he opposed the five challenged transactions was open to him in this case at least from the filing of the complaint on May 23, 1952 to the final decree entered December 11, 1957.

He decided not to oppose these challenged transactions in these proceedings. The chancellor was right in deciding that intervention came too late after a decree and appeal.

Appellant came before the chancellor in the dual role of both being a minority stockholder with 45 shares of stock seeking to enforce an accounting for $464,886, against 12,919⅓ shares of stock, and an owner of 40% of that 12,919⅓ shares of stock trying to prevent it being sold to pay off a decree to account for $464,886. The petition established the existence of statutory grounds for liquidation.

I am of the opinion that the plan of compromise adhered to the procedure established by Sec 90(c) of the Business Corporation Act, which makes available a method of compromising litigation, when approved by the requisite number of shareholders and found equitable. The record shows that the chancellor was right in finding the plan to be fair, equitable, desirable and a proper compromise of the litigation. The chancellor exercised good judgment in denying appellant application for leave to intervene and the order should be affirmed.