William W. Mangini, Jr., et al., Plaintiffs-Appellees, v. Oak Park Trust and Savings Bank, et al., Defendants-Appellants.

**Gen. No. 11,747.**

Second District, First Division.
October 14, 1963.
Rehearing denied November 12, 1963.

Anthony Caliendo, of Melrose Park, for appellant, Oak Park Trust & Savings Bank.

Corrigan and Mackay, of Wheaton (John R. Mackay, of counsel), for appellees.

SMITH, J.

We here review the decree of the DuPage County Circuit Court enforcing by injunction a restrictive covenant in deeds to a subdivision containing some 251 lots. All of the lots have been sold. The plaintiffs are the owners of about 30 lots in the subdivision and the defendants own about 10. Defendants were engaged in or about to engage in the resubdivision of the original lots into smaller lots. The trial court held that this was a violation of the restrictive covenants in the several deeds and enjoined the procedure. This appeal is prosecuted by one of the defendants only.

The immediate or remote grantor of all parties conveyed title by a trustee's deed containing, among others, the following provision:

> No structure other than a detached single family dwelling not exceeding two and one-half (2½) stories in height, and a private garage which must be attached to and immediately adjoin the principal building, the said garage including roof shall be of the same material and general design as that of the principal building; and/or greenhouse, and/or chicken house shall be erected or placed on any lot. Buildings accessory to principal building shall have a floor area not exceeding 400 square feet.

The various defendants admit to varying degrees that they have been and are now violating or intend to violate this covenant by resubdividing single lots to provide from 1 to 11 smaller lots and to provide for multiple family occupancy in some instances.

320

The defendants contend that they have every right to resubdivide for two basic reasons: (a) that the character of the surrounding area has so changed that the enforcement of the covenant is neither economical, just or equitable; and (b) that a reservation, hereafter set forth, by the subdivider of the right to sell a portion of a lot in itself nullifies the restrictive covenant and renders it unenforceable. Upon the soundness of one or the other of these propositions the claimed right of the defendants must rest.

■■ Defendants properly assert that equity will not enforce restrictive covenants where the property and the neighborhood have, since the inception of the covenants, so changed in character or environment that the object of the covenants are defeated or cannot be accomplished, and their enforcement would be harsh, inequitable, unreasonable, or oppressive. Fink v. Simpson, 349 Ill App 243, 110 NE2d 460; Henricks v. Bowles, 20 Ill App2d 148, 155 NE2d 664. Facts, circumstances and changes are essential to bring the case at bar within the perimeter of the rule. They are wholly lacking in the record before us. The subdivision was platted in 1951–52. All parties acquired their present ownership with knowldege of the restrictive covenants. Some 50–75 homes have been constructed in reliance on their validity. The evidence shows that it was the purpose of the subdivider, for the common benefit of all, to provide lots of larger area, with adequate room, light and air and where the individual owner could erect homes reflecting their own individual tastes rather than a monotonous design of like size, material and design. To subvert and destroy this purpose the defendants now say that a part of the subdivision is now within the corporate limits of the Village of Glendale Heights, that municipal sewer and water service are now available where

septic tanks and individual wells were in the original scheme and that great industrial, commercial and non-residential uses are in the process of development. It is further shown that outside the subdivision the lots are smaller and multiple family dwellings are planned in adjacent subdivisions. However optimistic this blueprint may appear, it is sufficient to say that it has not arrived, that the original purpose of the covenants has not eroded and whether it will or will not is a matter of pure conjecture. No case has been cited nor have we been able to find one where, under the circumstances here stated, a court has refused to enforce restrictive covenants. We are not inclined to here plow in virgin soil.

The defendants further contend that the original subdivider reserved to himself a general power which effectively nullified the restrictive covenants as to single family occupancy. The reservation in question reads as follows:

> "Notwithstanding the provision and condition hereinabove set forth that no more than one dwelling shall be erected or placed on any one lot in said subdivision, the grantor reserves unto himself the right to sell and convey a portion of a lot, and if the grantor so sells and conveys a portion of a lot, a dwelling, houses may be erected or placed on such portion of a lot, but such portion of a lot shall otherwise be subject to all of the conditions and provisions otherwise covering such a lot as herein provided."

The record shows that the original grantor exercised this power on one occasion and conveyed half of one lot to a Mr. Gruber who owned the lot to its immediate South. Some time thereafter, Mr. Gruber acquired the other half of the same lot.

There seems to be little doubt that the weight of authority is that a reservation by a common grantor

of a general power to dispense with the restrictions on particular lots negatives the purpose of uniform development from which a mutuality of right among lot owners in a platted subdivision is deemed to arise. 19 ALR2d 1274, 1282. Defendants contend that the reservation in the instant case originally applied to "any" lot and that the words "a lot" should be read as "any lot." As so construed the right to subdivide the lots in the case at bar rested upon the whim or caprice of the original grantor and the restrictive covenant as to single occupancy on a single lot is thus a nullity. It must be remembered that the subdivider was himself creating the restrictions on the development of his own property. The word "a" refers to the singular such as "a man," "a house," and "a lot." The defendants' construction of the power is a strained interpretation of precise and restrictive language. That the subdivider exercised his power but once, suggests his own interpretation of his power was that it was restricted to a single lot. It should be further noted that the power was reserved to himself and does not by implication or otherwise indicate that it existed in his successive grantees. To hold that the exercise of the power in a single instance out of 251 is to hold that a single swallow makes a summer and a single raindrop makes a storm. The defendants are seeking a power which was exercisable by the grantor himself only in a single instance and, having been so exercised, fully exhausted its utility.

█ It further appears that there have been minor violations of the restrictive covenants in this subdivision. The fact that there may have been one or two violations in a subdivision as large as this does not create such a general breaking down of the common purpose and the covenant to justify a court in refusing its enforcement. Henricks v. Bowles, 20 Ill App2d 148, 155 NE2d 664, noted above.

Plaintiff-appellees filed a motion to tax costs of an additional abstract against defendant-appellant. This motion we took with the case. The original abstract did not completely or adequately present all of the evidence on the points raised. The motion is allowed and the clerk is directed to tax the costs of the additional abstract against defendant-appellant.

There being no error in the conclusions of the trial court, its decree should be and it is hereby affirmed.

Affirmed.

McNEAL, P. J. and DOVE, J., concur.