CLARA A. LeCLERQ, Plaintiff-Appellee, v. TOM ZAIA, Defendant-Appellant.

(No. 74-290;

Third District—May 30, 1975.

Charles R. Thomas and James R. Brodie, of Pekin, for appellant.

Kuhfuss & Kuhfuss, of Pekin, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a decree of the Circuit Court of Tazewell County which includes a mandatory injunction requiring defendant Tom Zaia to restore a roadway to an original position and condition and remove encroachments on the property of the plaintiff, Clara A. LeClerq, and restore the same to its original contours. The decree also contains an injunction enjoining defendant from further trespassing upon property of plaintiff, and awarded plaintiff the sum $1 nominal damages and an additional sum of $500 as punitive or exemplary damages and costs of suit.

The decree also found that plaintiff was the owner of a perpetual ease-

ment of ingress and egress over and across some real property owned by defendant. The court also found that plaintiff's predecessor had agreed to the relocation of the original easement to a point 10 to 15 feet from the southwest corner of defendant's house. Plaintiff had instituted the action for injunctive and monetary relief, and claimed that defendant had destroyed a road across defendant's property in which plaintiff had easement rights. Defendant also contends on appeal that the court erred in holding that the easement in question was not modified by an executed parol agreement, and, also, that plaintiff failed to prove such material interference with the easement as to justify a mandatory injunction requiring defendant to restore the roadway to a certain location.

It appears from the record that plaintiff LeClerq's grandparents, Gustav and Elizabeth Giebelhausen, originally owned a tract of land known as the Giebelhausen farm. They also owned two parcels in the subdivision immediately adjacent to the farm to the east, which were referred to as Lots 12 and 13 of the Pierson Subdivision. These lots not only adjoined the premises but were likewise contiguous to each other, with Lot 12 being to the north of Lot 13. A road now known as Duever Street runs westerly from the nearest highway approaching Lots 12 and 13. From the end of this street, the roadway, which is in question, curves northwest and passes through both lots before entering the farm property. The testimony indicated that this was the only means of access to the farm usable by buggy or automobile.

When Mr. Giebelhausen died in 1932 he was survived by his wife and four children, Gustav, Jacob, Edith, and Lena Duever (plaintiff's mother). In 1934, the Giebelhausen wife died and by her will she gave Lot 12 to her son, Gustav. Since Giebelhausen died intestate, his wife did not have full title to the property, but each of the four children also had fractional interests therein as heirs. The children all then "quitclaimed" their interests to their brother Gustav so that he might have the property in accordance with their mother's wishes.

On June 17, 1937, Gustav and his wife, Susan, signed a document agreeing to convey easement rights in the roadway across Lot 12 to Lena Duever. Thereafter, Lena Duever was the grantee in a deed of her mother's interests in the farm and in Lot 13. By deeds signed in 1938 and 1939, Gustav, Jacob, Edith and their spouses all quitclaimed their interests in the farm and in Lot 13 to Lena. At the same time, Gustav and Susan Giebelhausen executed a deed giving a perpetual easement in the roadway across Lot 12 to Mrs. Duever. The quitclaim deed by which Lena Duever transferred her interest in Lot 12 to Gustav, for the pur-

poses of carrying out their mother's intent, was dated August 2, 1939, the same day Lena granted an easement in the roadway across Lot 13 to Gustav.

It is not clear as to who lived in the various places, if at all, in the ensuing 20 years. It appears, however, that Lena Duever and her husband were living in St. Louis, Missouri. Lena's nephew (plaintiff's cousin) Ernest Giebelhausen who surveyed the property for plaintiff testified that he couldn't remember anyone living on the Giebelhausen farm in the last 10 years or from 1961 on. Plaintiff Clara LeClerq, Lena Duever's daughter, testified that she had never lived in the vicinity of the property, although she visited there. Her home was in Kirkwood, Missouri, at the time of the trial.

A Mr. Corrington, defendant's Zaia's father-in-law, acquired title to Lot 12 in the meantime and wished to undertake construction of a house thereon near the roadway. He got in touch with Mr. Duever, and Duever agreed that Corrington could move the roadway some 10 to 15 feet to the southwest so that it would not pass too close to the proposed home. In return, Corrington undertook to improve the road by covering it with gravel and also promising to maintain it.

Construction of the house was begun in 1961, and defendant Tom Zaia moved into the premises in 1965. In the meantime, Lena Duever died and her daughter, plaintiff LeClerq, obtained title to the Giebelhausen farm and Lot 13. On a visit to the property soon thereafter, plaintiff testified that she noticed Zaia digging up the road where it passed through Lot 12. Zaia told her he had to place a pipe there for drainage purposes. Sometime in 1966, plaintiff apparently became aware that defendant was in the process of actually moving the road. She sent him two letters (either personally or by attorney) identifying herself and her easement and insisting that the road be continued where it was. There was a conflict in the evidence as to whether notice was given to defendant before he moved the road. In 1967, she visited the property and showed Zaia her copy of the easement grant, which, according to plaintiff, he did not believe to be valid.

According to plaintiff, Zaia moved the road several feet to the southwest, raising its elevation 4 or 5 feet, and planted a "beautiful lawn" where the road used to be. Zaia testified that he also put more gravel on the road.

The hearing in this matter was delayed two years by negotiations between the parties and the city of East Peoria to solve the problem. At the close of the hearing, the trial court ordered defendant to restore the roadway to the original position and condition (i.e., to the position to which Corrington moved it); to refrain from further interfering with

the rights of plaintiff in using the easement, and from encroaching or trespassing on any of plaintiff's property. The court also directed that defendant pay $1 in actual nominal damages and $500 in punitive damages.

The first point raised by defendant is that the easement in question is either modified or extinguished by a parol agreement which had been carried out between Mr. Duever and Corrington. Defendant contends that an easement by grant (which may not be nullified by such an oral agreement) was not effectively created, but defendant concedes that there exists an easement by implication. Defendant apparently concluded that the Duever-Corrington agreement to move the road either extinguished the implied easement or modified it so that Zaia himself could later move the road again on his own property.

Plaintiff contends that defendant did not raise the issue below, and that he admitted the existence of an easement but relied upon the quitclaim deed from Lena Duever to Gustav Giebelhausen as an affirmative defense that it had extinguished the previously granted easement. Defendant's original answer, however, denied the material allegations of the complaint. The quitclaim deed referred to was asserted as a defense for the first time in the motion for summary judgment by defendant. From the record, it appears that in a conference between the court and counsel, defendant agreed to argue the quitclaim deed as an affirmative defense, but also to have a hearing on the merits of the case. While defense counsel orally admits the existence of the grant of easement to Lena Duever, the record does not show that defendant thereby admitted all material allegations of the complaint.

Irrespective of the nature of the contentions, and while it is apparent that there is some uncertainty as to the nature or validity of the easement grant, defendant concedes that there is an implied easement in the roadway in favor of plaintiff. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill.2d 379, 389, 192 N.E.2d 384; *Frantz v. Collins* (1961), 21 Ill.2d 446, 449, 173 N.E.2d 437; *People ex rel. Helgerson v. Hackler* (1961), 21 Ill.2d 267, 270—1, 171 N.E.2d 599.) The roadway was commonly used as access to the Giebelhausen farm on the property, including Lots 12 and 13, and the farm was owned by the elder Gustav Giebelhausen. It appears, also, that the roadway is the only means of access to the farm by vehicle and thus an easement of necessity could be said to exist.

Defendant does not appear to argue on appeal that the quitclaim deed from Lena Duever actually extinguished the implied easement. The parol agreement between Duever and Corrington could not justify Zaia's conduct in moving the roadway the second time. There is nothing in the record to show that Mr. Duever ever had any interest in the farm or

the easement and that title thereto apparently was solely in his wife, Lena. Lena, however, apparently acquiesced in the agreement as to the first movement of the road. Even if Corrington's agreement with plaintiff's father was an agreement between owners, it only operated to grant Corrington the right to move the roadway to the position where he established it. There is nothing in the parol agreement which would suggest that Corrington, Zaia, or anyone else could move the road elsewhere.

Defendant contends, however, that even assuming that he interfered with the easement, there was no showing of any material interference sufficient to justify the issuance of a mandatory injunction. While plaintiff argues that the issue of materiality was not raised by defendant below, but defendant's failure to specifically challenge in the trial court on this ground would not, in itself, by such omission, normally authorize a trial court to enter an injunction where such an order would not be supported by the facts. Defendant admits that he destroyed the old road and planted his lawn in its place as alleged in the complaint. He contends, however, that he rebuilt the road just a few feet away and even gave it a better gravel surface. This is disputed by plaintiff and also by certain facts in the record. It appears that defendant relocated the road by using fill which was of limited effectiveness and placed it on a side hill principally on or near the plaintiff's property. The testimony of the surveyor supports this position.

■■■ It is contended by defendant that to cause him to restore the road to its position as established following the Duever-Corrington agreement, would cause harm to defendant and be of relatively little value to plaintiff. A court of equity will normally balance the hardship of a proposed injunction upon a defendant as against benefit to be derived therefrom by a plaintiff. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill.2d 379, 392, 192 N.E.2d 384.) Such balancing of equity, however, is not normally considered where encroachment by a defendant was intentional. (*Ariola v. Nigro* (1959), 16 Ill.2d 46, 51-52, 156 N.E.2d 536.) Defendant here intentionally destroyed the existing road. He improved his own drainage situation and enlarged his front yard. While the road is not used very frequently, the easement as established was one which plaintiff had the right to have maintained in its location following the Duever-Corrington agreement. Defendant destroyed the road, and, without any understanding or agreement with plaintiff, relocated it in an undesirable location which places it principally on plaintiff's property. Under such circumstances, we believe the trial court was justified in entering the mandatory injunction as against defendant and in further ordering defendant to refrain from interfering with the easement rights and from encroaching on plaintiff's land. Similarly, the award of $500

in punitive damages was properly granted, as well as the nominal award with respect to actual damages as specified.

The decree of the Circuit Court of Tazewell County is, therefore, affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.