HOWARD R. MOORE *et al.*, Plaintiffs-Appellees, *v.* JOHN McDANIEL *et al.*, Defendants-Appellants.—(GERMANIA FEDERAL SAVINGS & LOAN ASSOCIATION, Petitioner-Appellant.)

Fifth District   No. 76-7

Opinion filed April 5, 1977.—Rehearing denied May 11, 1977.

JONES, J., dissenting.

Bock & Stenger, of Belleville (Ralph T. Stenger, of counsel), for appellants John McDaniel and Patricia McDaniel.

Hoagland, Maucker, Bernard & Almeter, of Alton (Gerald Walters, of counsel), for appellant Germania Federal Savings & Loan Association.

Hotto & Neubauer, of Fairview Heights (William R. Hotto, of counsel), for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants, John and Patricia McDaniel appeal from an order of the Circuit Court of St. Clair County enjoining them from maintaining a "trailer house or mobile home" on their property, in violation of a restrictive covenant. Germania Federal Savings and Loan Association (Germania), mortgagee of the McDaniels' property, appeals from the same court's denial of its petition to intervene.

The plaintiffs instituted this action on September 6, 1974. After the filing of responsive pleadings, the case was set for hearing on March 14, 1975. Prior to that date, however, defendants filed a "Motion for Continuance," alleging as grounds therefor that the Illinois Supreme Court would soon be deciding a case involving identical issues. The circuit court denied defendants' motion, and the hearing was held as scheduled. On April 29, 1975, the court filed an order and memorandum opinion denying the injunctive relief sought by plaintiffs.

On May 19, 1975, the Illinois Supreme Court filed its opinion in *Brownfield Subdivision, Inc. v. McKee*, 61 Ill. 2d 168, 334 N.E.2d 131 (1975). A few days later, plaintiffs submitted a post-trial motion, praying that the court vacate its order of April 29, and issue the injunction previously requested. On July 28, 1975, the circuit court granted plaintiffs' motion and enjoined defendants from maintaining the disputed structure on their property; this action was apparently prompted by *Brownfield*, although that decision is not referred to in the court's order. See *The Immobile Mobile Home—Brownfield Subdivision, Inc. v. McKee*, 25 De Paul L. Rev. 553, 561 (1976).

On August 18, 1975, Germania filed a petition to intervene as party defendant and a motion to vacate the order of July 28. The court denied Germania's petition, finding: (1) that Germania was not a necessary and indispensable party, (2) that the petition to intervene was not timely filed, (3) that granting the petition would unnecessarily delay the original proceedings, and that such delay would injure the plaintiffs, (4) that Germania failed to allege the existence of new evidence or any other matter which would require reversal of the judgment entered, and (5) that Germania did not exercise due diligence in obtaining its security interest from the defendants.

Defendants' property, which they purchased by warranty deed in July of 1974, was originally part of a larger tract owned and subdivided by Howard R. Moore. The tract is located in Villa Hills, an area just outside the City of Belleville. Defendants' warranty deed was expressly made subject to the restrictive covenants contained in a contract for deed dated June 1, 1966, and recorded on October 24, 1967. The relevant restrictive covenants, as they appear in the contract, state that:

"Plans for all buildings shall be submitted to Howard R. Moore

for approval in writing and such buildings shall be completed in a good and workmanlike manner.

* * *

There shall be no *trailer houses* placed on these premises for either temporary or permanent dwelling occupancy.

* * *

These restrictions to run for a period of 25 years from August 6, 1961 and shall be binding upon the vendees herein, and his or her heirs, executors, administrators and assigns." (Emphasis added.)

After the McDaniels acquired their lot in Villa Hills, they purchased a home from one Agnes Dunn. The home is a 1971 "Twin Lakes" model, described in the record variously as a mobile home, a double-wide mobile home and a modular home. It consists of two main components and a third, smaller component used as a family room. The components are designed to be bolted together as one living unit, and are not individually suitable for habitation. Each of the main units is 45' x 12', while the family room has dimensions of 26' x 12'. When the three components are joined, they provide approximately 1,400 square feet of living space. The main components are each built upon an undercarriage, to which axles, wheels and hitches can be attached. This removable "running gear" makes it possible to transport the units from one site to another. The family roon, however, has no undercarriage.

In order to purchase the home from Mrs. Dunn, the McDaniels entered into a $13,000 mortgage agreement with Germania. The agreement covers the McDaniels' lot in Villa Hills and "all buildings, improvements, fixtures or appurtenances now or hereafter erected thereon." The McDaniels subsequently contracted with a professional moving company to transport the structure from its permanent foundation in back of Mrs. Dunn's house to the McDaniels' property in Villa Hills. After the structure was hauled to its new location, it was placed upon a permanent foundation, the running gear was removed from the main units and the three components were bolted together. The record does not contain any explanation of how the structure was affixed to its foundation. Photographs were taken of the structure as it was transported to and assembled on the McDaniels' property. These photographs, which are included in the record, show that the individual components have the appearance of a mobile home.

Because the defendants purchased the structure second-hand, they received no descriptive brochures from the manufacturer, nor did they receive any ownership papers from Mrs. Dunn. On cross-examination, John McDaniel admitted that he had identified the structure as a double-wide mobile home on an application for insurance and on a financing statement given to Germania. Neither the insurance application nor the

financing statement is included in the record on appeal. The structure was identified as a mobile home on the McDaniels' application for a certificate of zoning compliance. John McDaniel explained, however, that this application was filled out by an employee of the Department of Zoning and that he did not agree with the employee's characterization of the structure.

We will first consider Germania's contention that its petition to intervene was improperly denied. Germania argues that it was an indispensable party to the action, that it had an absolute right to intervene under section 26.1(1)(b) of the Civil Practice Act, and, finally, that the trial court abused its discretion in refusing to allow Germania to intervene under section 26.1(2)(b). Ill. Rev. Stat. 1975, ch. 110, pars. 26.1(1)(b) and 26.1(2)(b).

■■ All persons are necessary or indispensable parties to the litigation who have an interest in the subject matter which will be materially affected by the decree. (*Mortimore v. Bashore*, 317 Ill. 535, 148 N.E. 317 (1925); *Safeway Insurance Co. v. Harvey*, 36 Ill. App. 3d 388, 343 N.E.2d 679 (1st Dist. 1976).) Fundamental principles of due process require the joinder of all indispensable parties to an action, and an order entered without jurisdiction over an indispensable party is null and void. The failure to join an indispensable party may be raised at any time, either by the parties or by the trial and appellate courts *sua sponte. National Bank v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 336 N.E.2d 115 (1st Dist. 1975); *Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132 (1st Dist. 1974).

We have discovered only one Illinois case, *Gulick v. Hamilton*, 287 Ill. 367, 122 N.E. 537 (1919), which discusses whether the mortgagee is an indispensable party to an action for injunction brought against the mortgagor. In *Gulick*, plaintiffs sought an injunction against the owner of an allegedly servient estate. The injunction would have prohibited the defendant from completing construction of a building which would have blocked a 10-foot strip of his land, over which plaintiffs claimed an easement. The trial court dismissed plaintiffs' action. On appeal, however, the supreme court reversed. The court held, *inter alia*, that defendant's mortgagee was not an indispensable party, reasoning that:

> "A proceeding for an injunction is personal against the individual, and the mortgagee was not erecting the building or participating in it and had no present interest to be affected by the decree. If the defendant should be permitted to improve the mortgaged property by extending his building over the 10-foot strip the security would be increased, but the defendant testified that the naked property, without any improvements, was worth $85,000 and the mortgage was for $37,000. The defendant was the one, and only one, responsible for the alleged wrong, and the

injunction sought was personal against him. Under these circumstances the mortgagee was not a necessary party." (287 Ill. 367, 372, 122 N.E. 537, 539.)

*Gulick* is, of course, distinguishable from the instant case. Germania lent $13,000 to the McDaniels under their mortgage agreement. The McDaniels paid only $2,000 for their unimproved lot. The mobile or modular home, presumably included in the mortgage as a "building, improvement, fixture or appurtenance," was intended to provide the balance of Germania's security for the loan. From these facts, Germania could conclude that it had "a present interest to be affected by the decree" and that, therefore, it was an indispensable party. We do not find this reasoning persuasive.

■■ The instant case involves a dispute over how the McDaniels may use their property, not over title to the property itself. Because of this fact and for the reasons stated below, we believe that the case at bar is distinguishable from *Hauser v. Power*, 351 Ill. 36, 183 N.E. 580 (1932), a case cited by Germania wherein the supreme court held that a mortgagee was an indispensable party to a dispute over title to the mortgaged real estate. At the time Germania and the McDaniels entered into their mortgage agreement, the contract which restricted the McDaniels' property was of record in the recorder of deeds office. Germania, therefore, had constructive, and probably actual, notice of the restrictive covenant prohibiting trailer houses, as McDaniel testified that an employee of Germania gave him a copy of the bond for deed which first brought the language of the restrictive covenant to his attention.[1] In *Bruno v. Picchi*, 99 N.Y.S.2d 207 (1950), the court held that a mortgagee was not an indispensable party to an action brought to enforce an easement against the mortgagor, reasoning that the mortgagee could not complain if the plaintiff prevailed, because its mortgage recognized the easement, and that if the mortgagors succeeded, the mortgagee would have additional security and thus would not be prejudiced. We feel that this reasoning applies to the situation presented in the instant case. It is immaterial that the mortgage agreement between Germania and the McDaniels did not expressly recognize the restriction against trailer houses. The bond for deed was properly filed and, as a matter of law, Germania was required to recognize the restrictions contained therein, regardless of how it chose to interpret them. If the McDaniels succeed in the case at bar, Germania's security will be increased. If the plaintiffs succeed, however, Germania's security will not be diminished because it will be left with exactly what it bargained for—a mortgage on the

---

[1] It is, of course, standard procedure for a mortgagor to examine the prospective mortgagee's title before entering into a mortgage agreement. See generally Baxter, *Sources and Factors of Real Estate Financing*, 1957 U.Ill.L.F. 350.

McDaniels' lot, subject to restrictive covenants. We, therefore, conclude that Germania was not an indispensable party to this action.

■■ Even if we were to decide that Germania had a sufficient interest in this controversy, we would not require its joinder as an indispensable party. The rule requiring joinder of indispensable parties is not applied when a party, though not before the court in person, is so represented by others that his interest receives actual and efficient protection. (*Mortimore v. Bashore*, 317 Ill. 535, 148 N.E. 317 (1925); *Cales v. Dressler*, 315 Ill. 142, 146 N.E. 162 (1925); *Cody Trust Co. v. Hotel Clayton Co.*, 293 Ill. App. 1, 12 N.E.2d 32 (2d Dist. 1937); *Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132 (1st Dist. 1974); *Boghosian v. Mid-City National Bank*, 25 Ill. App. 2d 455, 167 N.E.2d 442 (1st Dist. 1960).) This so-called "doctrine of representation" applies where persons are before the court who have the same interests, and will be equally certain to bring them forward and protect them, as those of persons not before the court. *Mortimore v. Bashore*, 317 Ill. 535, 540, 148 N.E. 317, 319 (1925).

■■ Although the courts have used general language in stating the "doctrine of representation," its operation has been most frequently applied in cases holding that the executor is an adequate representative of the beneficiaries under a will. (See, *e.v., Hale v. Hale*, 146 Ill. 227, 33 N.E. 858 (1893); *Cales v. Dressler*, 315 Ill. 142, 146 N.E. 162 (1924); *cf. Boghosian v. Mid-City National Bank of Chicago*, 25 Ill. App. 2d 455, 167 N.E.2d 442 (1st Dist. 1960).) Nonetheless, we see no reason why the doctrine cannot apply, in an appropriate situation, to the relationship between mortgagor and mortgagee. In the instant case, the interests of Germania and the McDaniels were identical. Both desired a ruling that the mobile or modular home was not a "trailer house"—the McDaniels in order to preserve their home, and Germania in order to protect its security interest. Under these circumstances, we feel that the McDaniels were an adequate representative of Germania's interests.

Germania also contends that it should have been allowed to intervene. The rules of intervention are set out in section 26.1 of the Civil Practice Act, which provides, in pertinent part:

"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: * * * (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action * * *.

(2) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: * * * (b) when an applicant's claim or defense and the main action have a question of law or fact in common." (Ill. Rev. Stat. 1975, ch. 110, pars. 26.1(1)(b) and 26.1(2)(b).)

Section 26.1 requires that an application to intervene be timely, whether the petitioner seeks to intervene as of right or under the section's discretionary provisions. (*Childress v. State Farm Mutual Automobile Insurance Co.*, 97 Ill. App. 2d 112, 239 N.E.2d 492 (4th Dist. 1968).) The timeliness of an application to intervene is a matter for the discretionary decision of the trial court. (*Duncan v. National Tea Co.*, 14 Ill. App. 2d 280, 144 N.E.2d 771 (1st Dist. 1957); *Avery v. Garbutt*, 19 Ill. App. 3d 1001, 313 N.E.2d 274 (1st Dist. 1974); *Walsh v. Union Oil Co.*, 131 Ill. App. 2d 1015, 268 N.E.2d 706 (5th Dist. 1970).) In the instant case, Germania's petition to intervene was filed after the entry of judgment, and the trial court found that it was not timely filed. Germania now argues that that finding was an abuse of discretion.

■■ Intervention is usually allowed only before judgment, and will be granted after judgment only when it is necessary to protect the rights of the intervenor. (*Wheeling Trust & Savings Bank v. Village of Mount Prospect*, 29 Ill. App. 3d 539, 331 N.E.2d 172 (1st Dist. 1975); *City of Chicago v. Zik*, 63 Ill. App. 2d 445, 211 N.E.2d 545 (1st Dist. 1965); *County of Cook v. Triangle Sign Co., Inc.*, 40 Ill. App. 2d 202, 189 N.E.2d 25 (1st Dist. 1963).) In cases which have allowed intervention after judgment, the intervenor was unaware of the original suit until after judgment was entered. (See, *e.g., City of Chicago v. Zik*, 63 Ill. App. 2d 445, 211 N.E.2d 545 (1st Dist. 1965); *cf. Avery v. Garbutt*, 19 Ill. App. 3d 1001, 313 N.E.2d 274 (1st Dist. 1974).) On the other hand, if the intervenor was aware of the original suit prior to judgment, had an ample opportunity to intervene before final judgment was entered and does not adequately explain his failure to do so, his petition to intervene is untimely and will be denied. (*Childress v. State Farm Mutual Automobile Insurance Co.*, 97 Ill. App. 2d 112, 239 N.E.2d 492 (4th Dist. 1968); *Kendrick v. Standard Oil Co.*, 81 Ill. App. 2d 176, 225 N.E.2d 437 (1st Dist. 1967); see Annot., 37 A.L.R.2d 1306 (1954).) The record in the instant case does not indicate when Germania first became aware of the action brought against the McDaniels. Germania's petition to intervene is silent on that subject, nor does it explain Germania's failure to seek intervention before judgment was entered. In its brief, Germania states it was not notified of the action and that, "[t]here is no indication in the record as to when petitioner first became aware of the suit." Under the circumstances, we feel that Germania has failed to show that it exercised reasonable diligence in seeking intervention. Germania has filed a motion for new trial along with its petition to intervene, and we cannot overlook the possibility that Germania gambled on the outcome of the action and only decided to seek a retrial when the decision went against its interests. See Annot., 37 A.L.R.2d 1306, 1344 (1954).

Germania's failure to show reasonable diligence is sufficient, alone, to

uphold the denial of its petition to intervene. We must point out, however, that Germania has not shown how it would be prejudiced by the denial of its petition. Germania argues that it was entitled to intervene as of right because its interests were not adequately represented, but it has failed to make specific allegations in support of this charge. In order to intervene on the basis of inadequate representation, the applicant must show either that his interest in the case is different from that of the party who represents him, or that the representative party was ineffective in his prosecution or defense of the action. See *Lurie v. Rupe*, 51 Ill. App. 2d 164, 201 N.E.2d 585 (1st Dist. 1964); Annot., 84 A.L.R.2d 1412, 1420-21 (1962).

Intervention was allowed after judgment in *City of Chicago v. Zik*, 63 Ill. App. 2d 445, 211 N.E.2d 545 (1st Dist. 1965), for instance, because the action was uncontested. Intervention has also been allowed after judgment upon a showing that the party who, it is asserted, represents the applicant's interest, actually filed a "friendly suit" (*Dowsett v. City of East Moline*, 8 Ill. 2d 560, 134 N.E.2d 793 (1956)) or lacked the incentive to present a vigorous defense or prosecution for some other reason. *Wert v. Burke*, 47 Ill. App. 2d 453, 197 N.E.2d 717 (1st Dist. 1964); *People ex rel. Baylor v. Bell Mutual Casualty Co.*, 2 Ill. App. 3d 17, 276 N.E.d 113 (1st Dist. 1971); *Shlensky v. South Parkway Building Corp.*, 44 Ill. App. 2d 135, 194 N.E.2d 35 (1st Dist. 1962).

■■ In the instant case, we have already noted that Germania's interest was identical to the McDaniels'. The record indicates that the McDaniels presented a vigorous defense at trial. The McDaniels have appealed and there is no indication that they have done anything which would conflict with Germania's interest. In short, Germania's representation has been adequate. For this reason, Germania would not be entitled to intervene as of right even if it had shown that its petition were timely filed.

■■ Germania's final contention is that the trial court abused its discretion in refusing to allow intervention under section 26.1(2)(b) (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(2)(b)). We need not consider this argument because of Germania's failure to show that its petition was timely filed. We point out, however, that when the allowance of intervention is discretionary, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(5).) In denying Germania's petition to intervene, the trial court found that: (1) Germania failed to allege the existence of new evidence or any other matter which would require reversal of the judgment entered, and (2) that granting the petition would unnecessarily delay the original proceedings, and that such delay would injure the plaintiffs. In making these findings, the trial court obviously felt that a complete determination of all the issues could be made without allowing Germania to intervene.

Further delay in the enforcement of the injunction, which was issued over one year ago, would prejudice the plaintiffs. Therefore, we feel that the trial court did not abuse its discretion in denying Germania's petition.

We will now consider the issues raised by the defendants, John and Patricia McDaniel. Defendants' first contention is that their home was not proved to fall within the terms of the restrictive covenant prohibiting trailer houses. We conclude that this case is controlled by the holding in *Brownfield Subdivision, Inc. v. McKee*, 61 Ill. 2d 168, 334 N.E.2d 131 (1975). The defendants in *Brownfield* purchased a home which seems to have been virtually identical to the structure involved in the instant case, and installed it upon property restricted by the following covenant:

> "No structure of a temporary character, trailer, basement, tent, shack, mobile home or garage shall be used on any Lot, at any time, as a residence, either temporarily or permanently." (61 Ill. 2d 168, 169, 334 N.E.2d 131, 132.)

Brownfield Subdivision, Inc., a nonprofit corporation, then instituted an action for enforcement of the covenant, and was granted an injunction by the trial court which was affirmed on appeal.

Defendants argue that the instant case is distinguishable from *Brownfield*. They emphasize that the covenant in *Brownfield* restricted all temporary housing, while the covenant in the case at bar prohibits only one type of temporary housing, a "trailer house"; however, the characterization of the structure involved in *Brownfield* as a trailer or mobile home was the essential issue for the court's determination. The terms trailer, mobile home and trailer house are used interchangeably in common parlance, and there is no real basis for distinguishing one from another. For this reason we feel that *Brownfield* cannot be distinguished from the instant case because of the differences in the language used in the restrictive covenants.

Defendants also argue that the draftsman of the covenant intended to prohibit only conventional travel trailers, mobile homes, and, possibly, double-wide mobile homes at the time he drafted the restrictive covenant. They state that their structure is a modular home[2] and that a modular home is not a "trailer house," and was unknown when the restriction was created.

The industrial housing industry apparently distinguishes between the modular house and the double-wide mobile home. The authorities cited in defendants' brief indicate that the difference between the two is in

---

[2] Evidence introduced at trial tending to prove that defendants' structure is a modular home consists only of John McDaniels' unsupported assertions and the fact that the McDaniels financed their purchase of the home through a mortgage agreement rather than a security agreement under Article 9 of the Uniform Commercial Code. Whether a security interest was perfected in favor of the lending institution does not appear in the record before the court.

design. The modular house, although fabricated in components, is built to the same specifications as conventional housing. The double-wide mobile home, formed by joining two conventional-sized mobile homes, is built according to the single, industry-wide standard applicable to mobile homes. See J. A. Reidelbach, Jr., Modular Housing—1971, Facts and Concepts.

The defendants in *Brownfield* also contended that their structure was a sectional, or modular, home. The supreme court did not expressly rule on this contention, and its reasoning in the case leaves the importance of the distinction between modular and double-wide mobile homes somewhat in doubt. The court did state that the structure in *Brownfield* was advertised as a double-wide mobile home. We believe, however, that the court found any distinction between the modular house and the double-wide mobile home to be irrelevant because the components of both types of housing are built upon detachable running gears. The court reasoned:

> "Photographs in evidence show it to have the superstructure and appearance of a mobile home. In Hodes and Roberson, The Law of Mobile Homes, which we have cited, it is said that sectional homes are regarded as within the mobile-homes category. There was a concrete foundation here but the structure was in no way attached to it or to the three I-beams on which the structure simply rested. The structure can be transported to another location after the two sections have been separated and the removable undercarriages reattached to the bottoms of the sections. One of the exhibits (an article from a trade journal) attached to the defendants' brief in this court refers to a modular unit's portability as a difference from and an advantage over the conventional home.
>
> The majority of courts considering the question have held that removing the wheels or running gear of a mobile home and placing it on a permanent foundation does not convert the home into a permanent structure. * * *
>
> * * *[W]e consider the position taken in the majority of holdings is to be preferred." (61 Ill. 2d 168, 176, 334 N.E.2d 131, 135.)

■■ Following the reasoning of *Brownfield*, we must give the language of the restrictive covenant in the instant case its natural meaning. Photographs included in the record show defendants' home to have the "superstructure and appearance" of a mobile home. John McDaniel testified, in substance, that the main components of his home were built upon detachable running gears. Defendants cross-examined Howard Moore at length concerning his intent in drafting the covenant. The only meaningful information which we can glean from his testimony, however, is that he was not familiar with the terms "modular" and

"double-wide" at that time. This does not prevent us from attributing the broad meaning to the term "trailer house" which is required under *Brownfield*. We hold that defendants' structure, whether it is characterized as a modular or double-wide mobile home, is a "trailer house" and, therefore, prohibited by the restrictive covenant.

Defendants also contend that the trial court erred in denying their motion for a continuance. Supreme Court Rule 231 sets out specific grounds for which continuances must be granted. (Ill. Rev. Stat. 1975, ch. 110A, par. 231.) The ground relied upon by defendants, that the supreme court would soon decide a similar case, is not mentioned in Rule 231. Defendants' motion was, therefore, directed to the sound discretion of the trial court, and that court's ruling will not be disturbed in the absence of a manifest abuse of discretion or a palpable injustice. (Ill. Rev. Stat. 1975, ch. 110, par. 59; *Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.*, 31 Ill. App. 3d 148, 334 N.E.2d 96 (5th Dist. 1975); *Shumak v. Shumak*, 30 Ill. App. 3d 188, 332 N.E.2d 177 (2d Dist. 1975).) We find none.

In interpreting restrictive covenants, it is said that each case must be decided on its own facts in order to give effect to the actual intent of the parties as of the time the covenant was made, and that covenants should be construed most strongly against the convenantor, with all doubts and ambiguities resolved in favor of natural rights and against restrictions. (*Kessler v. Palmeri*, 3 Ill. App. 3d 901, 278 N.E.2d 812 (3d Dist. 1972); *Crest Commercial, Inc. v. Union-Hall, Inc.*, 104 Ill. App. 2d 110, 243 N.E.2d 652 (2d Dist. 1968).) Defendants seem to be arguing that they relied upon the foregoing rule of construction in failing to introduce certain evidence at trial; that the supreme court ignored the normal rule of construction in *Brownfield*; and that this departure from the recognized rule of construction was prejudicial to their defense.

That no person has a vested right in any rule of law (*Maki v. Frelk*, 40 Ill. 2d 193, 239 N.E.2d 445 (1968)) may be a sufficient answer to defendants' argument, but we do not agree that the court's opinion in *Brownfield* changed the law regarding the interpretation of restrictive covenants. The opinion is more accurately characterized as an application of existing law. The rule of construction suggested is not applied when the meaning is plain and unambiguous. (*Nerone v. Boehler*, 34 Ill. App. 3d 888, 340 N.E.2d 534 (5th Dist. 1976).) In *Brownfield*, the court found that the meaning of the restrictive covenant involved was clear, obviating the need to employ rules of construction. Defendants cannot claim surprise. In the appellate opinion filed in *Brownfield* (*Brownfield Subdivision, Inc. v. McKee*, 19 Ill. App. 3d 374, 311 N.E.2d 194 (4th Dist. 1974)), the court stated that:

> "To us the covenant is clear—mobile homes are excluded and

the term mobile home is not elusive of meaning, or otherwise vague, or ambiguous. Hence, we need not concern ourselves with the rule of construction which says that if there is doubt we should lean away from any restrictions on use." 19 Ill. App. 3d 374, 376, 311 N.E.2d 194, 196.

■■ Defendants contend that the denial of their motion for a continuance deprived them of their right, under the due process clause, to a hearing "at a meaningful time and in a meaningful manner." (*Goldberg v. Kelly*, 397 U.S. 254, 267, 25 L. Ed. 2d 287, 299, 90 S. Ct. 1011, 1020 (1970).) The cases cited by defendants for this proposition in no way resemble the instant case. The discretionary denial of a continuance, even if it is erroneous, is not a violation of due process of law. As the supreme court pointed out in *Benton v. Marr*, 364 Ill. 628, 5 N.E.2d 466 (1936):

> "If errors are committed or erroneous and unjust decisions are rendered they may be corrected in the manner provided by law for the correction of such errors, but mere error in a judgment or decree does not deprive the losing party of the benefit of due process of law.
>
> The sole question relating to the denial of the motion for a continuance is whether or not the trial court erred in its exercise of judicial discretion. Due process is in nowise involved." 364 Ill. 628, 629-30, 5 N.E.2d 466, 467.

Defendants' final argument is that enforcement of the covenant will deprive them of their fundamental right to shelter, in violation of the due process clause. Although we agree that judicial enforcement of the covenant constitutes State action (*Shelley v. Kraemer*, 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836 (1948)), we do not think that defendants have raised an issue of constitutional proportions. Restrictive covenants will not be enforced if the party against whom enforcement is sought sustains the burden of showing that such enforcement would be inequitable. (*Exchange National Bank v. City of Des Plaines*, 32 Ill. App. 3d 722, 336 N.E.2d 8 (1st Dist. 1975).) We feel that defendants' argument in the instant case, although stated in constitutional terms, is really an attack upon the injunction order as an erroneous application of equitable principles. As the supreme court said in *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 259 N.E.2d 282 (1970):

> "The law is well settled that where a judgment or decree is challenged on the ground that its enforcement will deprive the person against whom enforcement is sought of some constitutional right, such as due process of law, no constitutional question is involved and the question presented is simply the validity of the judgment or decree. [Citations.] In other words, due process is not a guaranty against erroneous or unjust decisions by the courts

which have jurisdiction of the parties and the subject matter." (45 Ill. 2d 405, 413, 259 N.E.2d 282, 288.) See also *Calabrese v. Hatlen Heights Sewer & Water Co.*, 34 Ill. 2d 483, 216 N.E.2d 145 (1966); *Housing Authority of Gallatin County v. Church of God*, 401 Ill. 100, 81 N.E.2d 500 (1948); *Ockenga v. Alken* 376 Ill. 533, 34 N.E.2d 711 (1941).) Our duty, therefore, is to consider whether the trial court's decision to grant an injunction was correct under the rules of equity.

■■ A restrictive covenant will not be enforced when there has been such a change in the character and circumstances of the neighborhood since the creation of the restriction that the object of the restriction cannot be accomplished by its enforcement, or if as a result of such changes it would be unreasonable or oppressive to enforce it. (*Drexel State Bank v. O'Donnell*, 344 Ill. 173, 176 N.E. 348 (1931); *Cuneo v. Chicago Title & Trust Co.*, 337 Ill. 589, 169 N.E. 760 (1929); *Star Brewery Co. v. Primas*, 163 Ill. 652, 45 N.E. 145 (1896); *Mangini v. Oak Park Trust & Savings Bank*, 43 Ill. App. 2d 318, 193 N.E.2d 479 (2d Dist. 1963).) Before a change in neighborhood conditions will prevent the enforcement of a restrictive covenant, the change must be so radical and complete as to render the restriction unreasonable, confiscatory and discriminatory. (*Burden v. Lobdell*, 93 Ill. App. 2d 476, 235 N.E.2d 660 (2d Dist. 1968); Annot., 4 A.L.R.2d 1111 (1949).) The burden of proving such a change in the neighborhood is on the party attacking the restrictive covenant. Annot., 53 A.L.R.3d 492, 495 (1973); *Punzak v. DeLano*, 11 Ill. 2d 117, 142 N.E.2d 64 (1957); *N. H. Engle & Sons, Inc. v. Laurich*, 98 Ill. App. 2d 18, 240 N.E.2d 9 (2d Dist. 1968).

■■ Defendants in the instant case have not shown other violations of the covenant. They did introduce into evidence the photograph of a "trailer-home" installed upon a lot outside of the subdivision. Evidence of changed conditions outside of a restricted subdivision may be relevant to determining whether the subdivision itself has changed, but changes outside the area, standing alone, should not be allowed to abrogate a restriction to the detriment of lot owners within the subdivision. (*Exchange National Bank v. City of Des Plaines*, 32 Ill. App. 3d 72, 336 N.E.2d 8 (1st Dist. 1975).) Defendants have failed to sustain their burden of proving a "radical and complete" change in the neighborhood. (See *Burden v. Lobdell*, 93 Ill. App. 2d 476, 235 N.E.2d 660 (2d Dist. 1968); *Boschelli v. Villa Park Trust & Savings Bank*, 23 Ill. App. 3d 82, 318 N.E.2d 527 (2d Dist. 1974).)

■■ A court of equity will normally balance the hardship of a proposed injunction on the defendant against the benefit to be derived therefrom by the plaintiff. Hardship to the defendant, however, will not move the court to withhold injunctive relief against him if he has acted in

wilful violation of a restriction. (*LeClerq v. Zaia*, 28 Ill. App. 3d 738, 328 N.E.2d 910 (3d Dist. 1975); Dobbs, Remedies § 5.7, at 364 (1973); *Malchow v. Tiarks*, 122 Ill. App. 2d 304, 258 N.E.2d 811 (3d Dist. 1970).) The evidence in the instant case indicates that defendants were advised at least once prior to installing their home that to do so would violate a restrictive covenant. Under these circumstances, balancing of the equities was not required. The decision of the Circuit Court of St. Clair County is affirmed.

Affirmed.

G. MORAN, J., concurs.

Mr. JUSTICE JONES, dissenting:

I agree that this case should probably be controlled by the holding in *Brownfield Subdivision, Inc. v. McKee*, 61 Ill. 2d 168, 334 N.E.2d 131. However, I do not agree with the conclusion that Germania Federal Savings and Loan Association, the mortgagee of the concerned property, is not a necessary and indispensable party to this proceeding and accordingly I respectfully dissent.

It appears from the record that the defendants McDaniel had invested $2,000 in the lot in the subdivision and that Germania Federal Savings and Loan Association (hereafter Germania) had loaned $13,000 with the lot as improved with the mobile home as security. It therefore at once appears that the pecuniary interest of Germania in the outcome of the case far exceeds the interest of defendants McDaniel. Although plaintiffs' action is for an injunction couched in terms of prohibition (praying that defendants McDaniel be enjoined from "maintaining" their trailer house on the property) its effect is decidedly mandatory. It compels *removal* of the mobile home from the site. As a result of the outcome of this case, the interest of Germania will be greatly impaired, if not completely destroyed. And, as we have seen, that interest is by far the largest pecuniary interest in the property affected.

Our supreme court had occasion to discuss the rules pertaining to the necessity of joining parties to litigation in chancery in *Oglesby v. Springfield Marine Bank*, 385 Ill. 414, 52 N.E.2d 1000. That case, as does the one under consideration, involved interests in real estate. The defendants there filed an amended answer *after the evidence was practically concluded* which named additional parties who, were the assertions proved, would have an interest in the real estate as beneficiaries of a trust. The court noted that the amended answer squarely presented to the court the issue whether the additional parties were necessary parties.

The court stated that if there were persons who were not made parties to the suit and who were substantially interested in the subject matter, or the result, the court could not proceed to a final decree in the absence of such parties. The court's discussion of the principles involved included the following:

"The rule in chancery pleading and practice is that all persons who are legally or equitably interested in the subject matter and the result of the suit must be made parties. * * * It is a general rule of equity that all persons should be made parties who are legally or beneficially interested in the subject matter of the litigation, and who will be affected by the decree, so as to enable the court to dispose of the whole controversy. [Citation.] If the lack of parties is brought to the attention of the court, be it one of original or appellate jurisdiction, the court should not proceed further in the matter until the omission has been corrected, even though no objection is made by any party litigant. [Citations.]

Where a party has been omitted whose presence is so necessary that a final decree cannot be entered without necessarily affecting his interest, the court should not proceed to a decision of the case on the merits. The objection may be made by a party at the hearing, and the court will, upon its own motion, take notice of the omission and require the omitted party to be made a party to the litigation, even though no objection is made by any of the parties to the litigation. [Citations.] The objection may be made by a party at the hearing or on appeal or error, and the court will, upon its own motion, take notice of the omission and require the omitted party to be made a party. [Citation.] The objection of the nonjoinder of indispensable parties may be taken at the hearing or on appeal or error. [Citation.] This rule is inflexible, yielding only when the allegations of the bill disclose a case so extraordinary and exceptional in character as that it is practically impossible to make all parties in interest parties to the suit, and further, that others are made parties who have the same interest as have those not brought in, and are equally certain to bring forward the entire merits of the controversy as would the absent persons. [Citation.]

* * *

The interest of absent parties must be determined by the issues presented by the pleadings and the evidence and not by the final decision in the case. The mere fact that the court decides the issues in such a way that the absent parties would have no interest in the subject matter of the suit does not control. Such parties, if they have, or might claim, a substantial and present interest, under the

issues involved, are entitled to be heard. They are entitled to be present and to participate in the litigation of all questions affecting such interest." 385 Ill. 414, 422-26, 52 N.E.2d 1000, 1004-06.

While the general principles set forth in the *Oglesby* case are applicable to the case at hand, the case of *Hauser v. Power*, 351 Ill. 36, 183 N.E. 580, is extremely close on its facts since it concerns an omission to make a mortgagee a party to litigation over title to real estate. One of the litigants, asserting a fee simple title, had executed a mortgage to his interest and that mortgagee was not made a party to the proceeding. When the case reached the supreme court it, apparently on its own motion, reversed and remanded for joinder of the mortgagee, stating:

> "The decree must be reversed because of the non-joinder of the mortgagee to whom the mortgage of February 27, 1931, was made. He is a necessary party and is not joined as a defendant. It is a fundamental principle in all proceedings, whether common law, statutory or equitable, that a person must have an opportunity of being heard before a court can render judgment against him. The bill attacks the title to the undivided half of the land included in the mortgage, and the mortgagee is entitled to his day in court, to notice and a hearing before a decree can be made which will deprive him of any part of the security pledged for the obligation for which the mortgage was given. The interest of the mortgagee is therefore involved in determining whether the mortgagor held the title to all the land mortgaged or to an undivided half of it, only. Where a party has been omitted whose presence is so necessary that a final decree cannot be entered without necessarily affecting his interests the court should not proceed to a decision of the case on the merits. The objection may be made by a party at the hearing, and the court will upon its own motion take notice of the omission and require the omitted party to be made a party to the litigation even though no objection is made by any party litigant. *Stripe v. Yager*, 348 Ill. 362; *Hansen v. Swartz*, 345 id. 609; *Gaumer v. Snedeker*, 330 id. 511; *Mortimore v. Bashore*, 317 id. 535; *McMechan v. Yenter*, 301 id. 508; *Abernathie v. Rich*, 229 id. 412." *Hauser v. Power*, 351 Ill. 36, 39.

In *City of Chicago v. Zik*, 63 Ill. App. 2d 445, 211 N.E.2d 545, the petitioners for leave to intervene were the lessees of a building which had been ordered destroyed as a result of building code violations. They had not been made parties to the proceeding in which the destruct order was sought. The appellate court there remarked: "Certainly the petitioners did have a direct interest in the outcome of litigation seeking demolition of the subject property since only by its continued existence could petitioners' leasehold interests be safeguarded." 63 Ill. App. 2d 445, 447.

Mention should also be made of the case of *Glickauf v. Moss*, 23 Ill. App. 3d 679, 683, 320 N.E.2d 132, where the following quotation from *Gaumer v. Snedeker*, 330 Ill. 511, 515, 162 N.E. 137, was used:

> "Whenever a party has been omitted whose presence is so indispensable to a decision of the case upon its merits that a final decree cannot be made without materially affecting his interests, the court should not proceed to a decision of the case upon the merits. The objection may be made by a party at the hearing or on appeal or error, and the court will upon its own motion take notice of the omission and require the omitted party to be made a party to the litigation even though no objection is made by any party litigant. *Knopf v. Chicago Real Estate Board*, 173 Ill. 196; *Abernathie v. Rich*, 229 id. 412; *McMechan v. Yenter*, 301 id. 508; *Webster v. Jackson*, 304 id. 569; *Mortimore v. Bashore*, 317 id. 535."

And so it is with the interest of Germania in the property in question here. The injunction, mandatory in effect, will almost completely destroy the security for their mortgage. Only when the mobile home has a situs on a foundation with utility hookups and the appurtenances of permanancy does it have substantial value.

I disagree with the majority when they say that Germania's presence in the case was unnecessary because of the doctrine of representation, that Germania's interests were represented by the defendants McDaniel because their interests were the same. The interests of mortgagor and mortgagee are traditionally antagonistic. They are debtor and creditor. The interest of one must be carved from the interest of the other. Woe betides the mortgagor who assumes his interest to be that of the mortgagee and fails to make his payments when due. No better case could be found than the present to illustrate the point that the mortgagor cannot furnish proper representation to the mortgagee. With what vigor will the mortgagor defend the integrity of the property when his investment is $2,000 and that of the mortgagee is $13,000? The incentive in the mortgagor to properly defend the interest of the mortgagee is not present. Any idea that the representation would be given is refuted by the fact that the mortgage was never mentioned in the trial of this case, either in the pleadings or the evidence.

Here we have the owner of a 2/15ths pecuniary interest held to be representing the owner of 13/15ths of the pecuniary interest. The 2/15ths interest is a legal interest and will remain extant in the form of the lot. The 13/15ths interest is an equitable interest and would be all but destroyed as a result of the trial court's order for injunction.

Germania should not, at least at this stage, be held to be untimely with their petition to intervene. The majority concedes that the record is silent

as to when Germania first learned of the pendency of the action. The position of the majority now renders it impossible for Germania to address the question. It borders on the frivolous to state, as the majority does, that Germania stood by and gambled on the outcome and only sought intervention when the case went against their interest.

If there were in effect in Illinois a joinder of parties rule similar to Rule 19 of the Federal Rules of Civil Procedure (similar rules are in effect in about half of the States) the problem here would have been averted. Germania would be termed a necessary party and the obligation for their joinder would be upon the plaintiffs. Possible multiple actions would be avoided and the difficulties similar to that considered here would not arise.

For the foregoing reasons I would hold Germania to be a necessary and indispensable party and remand the case for such further proceedings as may be indicated after the pleadings are settled. The injunction case of *Bruno v. Picchi*, 99 N.Y.S.2d 207 (1950), a New York case relied upon by the majority, is not at all applicable. The outcome of the fracas over an easement in that case could in nowise affect the mortgagee of the property because the mortgage expressly recognized its existence.

Here, there is no apparent reason why Germania should not have been joined as a party. Their mortgage was a matter of record, as readily discoverable as the ownership of the premises in question. Moreover, they were easily available to the process of the court; their main office was located in the adjacent county of Madison and they maintained a branch office in St. Clair County itself. In my opinion no better case could be found to bring into play the provisions of Supreme Court Rule 26.1(1)(b) and (c) (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(1)(b) and (c)). If that rule is to have any efficacy it should be applied in this case.